[Crim. No. 2146. Second Appellate District, Division One.—December 28, 1931.]

THE PEOPLE, Respondent, v. WALTER J. RADZ, Appellant.

David Welts for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

BISHOP, J., *pro tem.*—On this appeal from a judgment, following his conviction of robbery in the first degree, and from the order denying his motion for a new trial, appellant presents but two points for our consideration. The first, that the evidence is insufficient, is fully disposed of by noting the testimony of the service station attendant. He stated that he was robbed at the point of a gun by two men, one masked and one unmasked, at 10:30 P. M. on April 28th. The service station where the robbery occurred was brilliantly lighted; the men were at their work of opening the till and effecting the robbery, some three to four minutes, during which period the witness saw the one who wore no mask, full face, profile and from the rear. The one who wore no mask, the witness stated, was the appellant. This alone is sufficient evidence to support the verdict.

Appellant's second point is that a new trial should have been granted him because of newly discovered evidence. Two affidavits were filed in support of the motion for a new trial. One, by a woman who was in attendance at the trial, but not in the role of witness, recited that appellant's co-defendant and a man known to her as Shapiro, were con-

stant visitors at her home during the last week in April. On the night of the robbery, the two arrived at her house early in the evening, remained there until about 10 o'clock, left in an automobile, to return forty-five minutes to an hour later. On their return they had money, "whereas to the best of affiant's knowledge, they did not have before". Where they were or what they were doing during their absence, she states she did not know. Shapiro, the affidavit continued, was a man five feet four or five inches in height, with a swarthy complexion and of a stocky build. So far as affiant was aware, Shapiro had but two suits, one brown, the other dark blue with a noticeable white stripe in it, and "to the best of her recollection" he was wearing the blue suit the night of the robbery. The other affidavit was from a woman who, as a witness at the trial, presented an alibi for the appellant, which the jury did not accept. In addition to some statements which are purely hearsay, and as such to be disregarded, her affidavit merely corroborates the contents of the first as to Shapiro's general description and his being seen in a dark blue suit with a noticeable white stripe.

The test which we are to apply to these affidavits is stated for us in *People* v. *Buckley*, (1904) 143 Cal. 375, 392 [77 Pac. 169, 176], as follows: "A new trial should not . . . be granted upon the ground of newly discovered evidence, unless the showing as to such newly discovered evidence is sufficiently strong to render a different result probable.

"The question as to whether such a showing is made is one that is addressed to the sound legal discretion of the trial court, and the action of that tribunal in regard thereto will not be disturbed, except in cases of manifest abuse." (See, also, *People* v. *Ledbetter*, (1930) 106 Cal. App. 109 [288 Pac. 832], and cases cited.)

The most that appellants' newly discovered evidence would do, if presented on a new trial, would be to advance Shapiro as a person who might have been the unmasked robber. Obviously, it does not establish him as the man, it only offers him as a possible candidate for the position. Shapiro's appearance, however, as portrayed in the affidavits, was not such as to make likely the conclusion that it was he, and not the appellant, who had his hand in the service station till. The description as to the complexion and build of the robber agrees fairly well with that given

of Shapiro. As to the clothes worn by each, the parallel is not complete. Shapiro, to the best of affiant's recollection, wore his dark blue suit with its noticeable white stripe. The color of the unmasked robber's suit is not given us by the service station operator (nor by anyone else), but "it was a pencil stripe", "a very fine thread stripe (of) white". The owner of the service station, who identified appellant as the man leaving the station just after it was robbed, characterized the robber's suit as a dark one with a fine pin stripe in it. We are told what sort of a hat, shirt, tie and shoes the robber had, but no word as to these articles of dress as worn by Shapiro. The silence of the affidavit on these matters may well have caused the trial judge to believe that the facts would have required a description out of harmony with that given of the robber.

Moreover, Shapiro's height, as set forth in the affidavit, was five feet four or five inches. This, instead of raising a suspicion that he and not appellant might have been the robber, rather removes him from further consideration, for nowhere in the evidence was the robber described as being less than five feet eight inches in stature. The service station operator stated that the unmasked bandit was five feet eight to ten inches in height. As appellant says in his opening brief: "The difference between the height of a man five feet four inches and a man five feet eight to ten inches, is far greater to the eye than the mere number of inches would indicate." The service station owner fixed the robber's height at five feet nine inches. The trial court may well have said to himself: "Inserting Shapiro, with his five feet four inches, into this case, would not serve to push appellant, with his five feet eight, nine or ten inches, out of it." True, an attempt was made to impeach the service station operator by showing that he had previously stated that the robber was five feet four. The trial judge may have been satisfied that the attempt was unsuccessful; he was in a position to view the witnesses, we are not. But if successful, the result was not to introduce into the case any evidence that the unmasked robber was five feet four, but only to discredit the estimate of five feet eight to ten. (*Albert* v. *McKay & Co.*, (1917) 174 Cal. 451, 456 [163 Pac. 666].)

But, beyond all this, there is nothing at all inconsistent between the recitals of the affidavits and the facts as found by the jury and approved by the court (as shown by his denial of a new trial). Shapiro in his blue suit may have gone out and returned with the masked robber, just as stated, and yet the fact be that the appellant was the man who had difficulty opening the cash register, as the service station operator insisted. The trial court heard the testimony of the witnesses, and we do not find that he abused the discretion vested in him, in concluding that the newly discovered evidence would not make probable a disbelief in the prosecution's case.

The judgment and the order denying the motion for a new trial are affirmed.

Conrey, P. J., and Houser, J., concurred.