[Crim. No. 227. Fourth Appellate District.—February 17, 1932.]

THE PEOPLE, Respondent, v. E. E. COVINGTON, Appellant.

Edgar E. Langford for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

LAMBERT, J., *pro tem.*—The appellant was charged by an information filed by the district attorney of San Diego with the crime of robbery. To this charge he entered a plea of not guilty, and was thereafter tried by a jury and found guilty of the crime of robbery in the first degree. He thereafter made a motion for a new trial, which motion was by the court denied and judgment pronounced in accordance with the law. The appeal is taken from the judgment and order denying his motion for a new trial. It appears by the evidence adduced on behalf of the People of the State of California that on June 6, 1931, between the hours of 10 and 11 o'clock P. M. the Hazard Dining Car Restaurant, located at the corner of Kettner Boulevard

and Laurel Street in San Diego was robbed by two men, one of whom was afterward identified as appellant. The owner of the restaurant, John Sgobassi, and a waitress in the restaurant, Shirley Trow, both identified appellant as one of the men who held them up at the point of a gun and removed about $125 from the cash register. According to the testimony of the witness Shirley Trow appellant and another man entered the Dining Car Restaurant at about 10:20 P. M. on June 6, 1931, and sat down at the counter and ordered two cups of coffee. They then asked for several glasses of water and as the witness turned around to get the water the unknown robber pointed a gun at her while appellant at the same time told her not to move. At this point the owner of the restaurant, John Sgobassi, came out of the kitchen and as he reached the doorway appellant arose, drew his gun and pointed it at him, telling him not to move and to put his hands up. Appellant then asked Sgobassi where the money was and was directed to the cash register. Thereupon appellant opened the register and removed the money and the two men backed out of the Dining Car Restaurant. The witness Trow testified that she took particular notice of appellant's features because he directed vile language at her, and that she was positive that he was the same man who held them up on the occasion in ·question. She was also permitted to testify that about September 7, 1931, she identified the appellant at the county jail as one of the men who held up the Dining Car Restaurant. The testimony of the witness John Sgobassi was substantially the same as that of the witness Trow. He also positively identified appellant as the man who had committed the robbery. An investigator for the district attorney's office also testified that appellant had stated to him at the county jail that he was worried because he did not remember where he was on June 6, 1931.

█ The defense of the appellant consisted of his denial of his participation in the robbery and an alibi. The appellant's first contention is that the evidence is insufficient to support the verdict. There is no merit in this contention. The two victims of the holdup positively identified appellant as one of the perpetrators of the robbery. This was amply sufficient to support the verdict. (*People* v. *Wilson*, 76 Cal. App. 688 [245 Pac. 781] ; *People* v. *Stoerkel*, 87 Cal. App. 336

[262 Pac. 825] ; *People* v. *Radz,* 119 Cal. App. 435 [6 Pac. (2d) 527].)  Appellant's objection here involves the weighing of the evidence.  This we may not do.  The appellant presented a defense of alibi which, if believed by the jury, would of course have brought about his acquittal, but the jury to whom is entrusted the duty of determining the facts, by their verdict found against this defense.  In *People* v. *Yeoman,* 115 Cal. App. 518 [1 Pac. (2d) 993], the court commenting on a case wherein a defense of alibi was interposed and wherein the evidence was not so strong as the testimony in the case at bar, said:

"For the defendant a very strong 'alibi' was presented. Judging from facts appearing in the reporter's transcript of the proceedings at the trial, no adverse criticism may properly be made of any of the witnesses who testified in that regard.  Apparently each of them was a person of good reputation, and the testimony given, which was of a most positive character, was clearly to the effect that under no condition would it have been possible for defendant to have participated in the commission of the crime of which he was charged.  Indeed, viewed from the 'cold record', it would be hard to conceive of a more convincing 'alibi' in any case than was presented by defendant in his own behalf. If, considering the entire evidence adduced at the trial of the action, it be difficult to reconcile one's mind to the verdict of the jury, or to understand the reasoning by which the testimony given by defendant's witnesses failed to accomplish the result of creating in the 'mind' of the jury a reasonable doubt as to the guilt of defendant, a compensating thought is presented with knowledge of the rule of law which presumably was followed herein: that in order to be justified in his denial of the motion for a new trial the judge who presided at the trial must have been convinced, not only that the evidence was sufficient to support the verdict, that the weight of the evidence was in favor thereof, but that in all respects it was legal and in furtherance of justice.  (20 Cal. Jur. 25 et seq., and authorities there cited.)  Thus fortified, aided by the legal principle that on appeal from a judgment, if it appear that the verdict was supported by substantial evidence, the appellate tribunal is without authority to direct a reversal of the judgment or the order by which the motion of the defendant for a new trial

was denied, the proper course of this court in the premises is clearly indicated."

■ It is next contended that the court committed prejudicial error in admitting in evidence over the objection of appellants the testimony of the witness Shirley Trow, one of the witnesses who identified appellant at the trial relative to her identification of him at the county jail. Under the authority of *People* v. *Cotton*, 117 Cal. App. 469 [4 Pac. (2d) 247] (Oct. 15, 1931), and cases therein cited, this was error. However, the case may not be reversed unless from a consideration of the whole case we should be of the opinion that there has been a miscarriage of justice. (Art. VI, sec. 4½ of the Constitution of the state of California.) If the witnesses Trow and Sgobassi, who identified appellant, had been weak or vacillating in their identification of appellant at the trial, then the attempt to bolster up this testimony in such a manner might be prejudicial, but in view of the positive character of their testimony in this case we cannot believe that it at all affected the verdict.

■ Appellant next assigns as error the refusal of the court to permit the defendant to be more closely observed by the jury. Just where appellant was at this time does not appear from the record, but presumably he was on the witness-stand. The following appears in the record:

"Mr. Langford: Come over here Mr. Covington— Ladies and Gentlemen of the jury—

"The Court: Just put the witness up here (indicating).

"Mr. Langford: I just want to let the jury see Mr. Covington's eyes.

"The Court: They can see him from up here.

"Mr. Langford: I don't know whether they can or not, see the color."

It seems in this connection that one of the witnesses, Sgobassi, had testified on cross-examination, at the preliminary examination, that appellant's eyes were brown, whereas they were in fact blue, and it was also claimed that he had a couple of scars on his forehead, the result of cuts, which cuts were claimed by his alibi witnesses to have been visible on the night of June 6, 1931, and it was for the purpose of observing his eyes and scars apparently that appellant desired to have the jury make an inspection of his features. Certainly nothing appears in the record to show that the

jury did not have ample opportunity to observe him, and it appears that they did from the statement of the trial judge.

It is next claimed that the deputy district attorney was guilty of prejudicial misconduct in attempting to have the witness Trow identify a photograph of appellant in a certain book which appellant characterizes in his brief as a "Police Rogue's Gallery". An inspection of the record in this case did not disclose what kind of a book was shown to the witness, but there is no mention of any "Police Rogue's Gallery" in the record and the court promptly sustained the objection to the question when the witness was asked to identify a picture of appellant. In this connection we may state that while there is nothing to indicate that the deputy district attorney was not acting in perfectly good faith in offering this evidence as well as the extrajudicial identification of appellant, and undoubtedly he was, yet it is to be regretted that an officer engaged in the administration of law will not inform himself as to the established rules of evidence in advance of the trial and thus avoid much work and confusion. Article VI, section 4½, of the Constitution was intended to prevent the reversal of a judgment of conviction for errors which do not substantially affect the rights of the defendant, but it was never intended to and it did not change the rules of evidence. But we do not perceive any prejudicial error in this occurrence last referred to.

It is next contended that the deputy district attorney was guilty of prejudicial misconduct in attempting to introduce evidence that the appellant had gone under an assumed name and had committed wrongful acts not connected with the charge upon which he was being tried and had associated with criminals. Appellant refers us to the portions in the transcript which he claims covers this point. An examination of the record does not disclose that the appellant was shown to have committed other crimes or that he associated with criminals. A complete answer to this assignment is that the appellant did not object to any of this evidence except in one or two instances, and where he did object the court very promptly sustained his objection. It may be said in passing that as to the cross-examination of the defendant and his witnesses, that the cross-examination and redirect examination went far beyond the matters subject to

legitimate inquiry, but all this evidence went in without objection from either side, and furthermore, from a reading of it we get the impression that appellant was in nowise prejudiced by it. Appellant objects particularly to the evidence given by the complainant and some of his witnesses relative to his having registered at the apartment where he resided under a name other than that of Covington. Likewise there was no objection made to this evidence, and we do not see how the appellant can now complain of its admission. (*People* v. *Kizer*, 22 Cal. App. 10 [133 Pac. 516, 521, 134 Pac. 346]; *People* v. *Thourwald*, 46 Cal. App. 216 [189 Pac. 124]; *People* v. *Collins*, 79 Cal. App. 127 [249 Pac. 60].) It is true, as contended by appellant, that it is not permissible for the prosecution to ask questions on cross-examination, to elicit the fact that the defendant has been going under different names, that is to say, this is the general rule. (*People* v. *Frank*, 75 Cal. App. 74 [241 Pac. 924].) And also there might be cases where a failure to object might not foreclose the consideration of such evidence, but this is not such a case, and by no stretch of the imagination can it be claimed that the deputy district attorney was not offering this evidence in good faith. The theory was that the defendant having testified that he lived at a certain place, the prosecution then had a right to show that he had registered there under an assumed name. We doubt that this would follow, inasmuch as there was no issue as to the appellant's name, nor does it appear that the registration under a false name was part of a plan or scheme adopted to avoid identification in the commission of the crime. (See *People* v. *Arnold*, 199 Cal. 471, at 492 [250 Pac. 168].) But the matter was fully gone into by the appellant on redirect examination, and in view of the explanation given, we do not believe the appellant was at all prejudiced in the eyes of the jury.

█ Finally the appellant contends that the court erred prejudicially in not granting him a continuance in order for him to make a showing by affidavits of alleged newly discovered evidence. The record shows that the appellant was convicted on October 22, 1931; that the court thereupon fixed October 26, 1931, as the date for pronouncing judgment. On the last-mentioned date appellant made a motion for a new trial on all the statutory grounds, and particularly as to newly discovered evidence, and asked for thirty days' con-

tinuance on the argument of the motion. The court continued the matter to October 30, 1931. At this time appellant's counsel again asked for a continuance for the purpose of securing affidavits on the ground of newly discovered evidence. This showing consisted of the statement of appellant's counsel of what he hoped to secure, together with an affidavit of a party by the name of Shaffer as to what he had heard another party by the name of Chehock, then in San Quentin, say with reference to the commission of the crime in question, that is, that he hoped to get an affidavit from Chehock that he, Chehock, committed this crime for which he, appellant, now stood convicted. The granting or denying of a continuance in a situation such as was before the court was of necessity a matter very largely within his discretion, and unless a clear abuse of the same can be shown the appellate court will not disturb the ruling of the trial court. In *People* v. *Yeager*, 194 Cal. 452, at 491 [229 Pac. 40, 56], it is said: "The question of granting an application for additional time to supplement the showing by additional affidavits and oral examination and the question of the sufficiency of the newly discovered evidence are addressed to the legal judgment and sound discretion of the trial court, and we perceive no reason for disturbing the order denying the motion for a new trial." The trial judge heard all the evidence, saw all the witnesses testify, and was in a decidedly better position to solve this matter than we are, and we certainly cannot say as a matter of law that he has abused his discretion in denying this order for a continuance.

The judgment and order appealed from are affirmed.

Barnard, P. J., and Marks, J., concurred.