[Crim. No. 4857. In Bank. Mar. 23, 1948.]

THE PEOPLE, Respondent, v. JOHN SLOBODION, Appellant.

William H. Quinn for Appellant.

Fred N. Howser, Attorney General, David K. Lener, Deputy Attorney General, Ralph E. Hoyt, District Attorney (Alameda County), and Frank D. Parker, Deputy District Attorney, for Respondent.

J. F. Coakley, District Attorney (Alameda County), Arthur H. Sherry, Assistant District Attorney, John P. Sparrow, Deputy District Attorney, Edmund G. Brown, District Attorney (San Francisco County), John Quincy Brown, District Attorney (Sacramento County), Charles J. McGoldrick, District Attorney (Sonoma County), and James M. Thuesen, District Attorney (Fresno County), as Amici Curiae on behalf of Respondent.

TRAYNOR, J.—Defendant was charged in two counts of an information alleging (1) a violation of Penal Code, section 288, which defines lewd and lascivious conduct against a child under 14 years of age, and (2) a violation of Penal Code, section 288a, which defines a form of sex perversion. In the first count defendant was charged with placing his "hands and private parts upon the bare body and private parts" of the prosecutrix, a 6-year-old girl; in the second count he was charged with "copulating the mouth" of defendant with "the sexual organ" of the prosecutrix. The defense contended at the trial that if the acts complained of actually occurred, the prosecutrix erroneously identified defendant as the wrongdoer. Defendant was convicted on each count and was given concurrent sentences. He appeals from the judgment of conviction and from the order denying a new trial.

Defendant contends that the evidence was insufficient to support the verdict. As usually happens, the testimony of the prosecutrix was for the most part uncorroborated. She could not remember the date when the offenses were committed, but other witnesses established that the date was September 15, 1945. On that day, according to the prosecutrix, defendant persuaded her to accompany him to an abandoned house less than a block from her home. A room in the house contained a bed and table. Defendant removed a bottle of whiskey from his pocket and took off some of the prosecutrix's clothing as well as his own. Defendant then put the child on the bed. He put his private parts into her private parts and then put his mouth to her private parts. He then sat her on the table and repeated the foregoing acts. Defendant allowed the child to return home after she twice requested him to let her go. Before defendant took her into the house, and again while they were inside, he told the prosecutrix that he would get her an ice cream cone.

A boatswain in the Coast Guard and his wife occupied rooms in the prosecutrix's home. The boatswain arrived home that afternoon at about 2:30 p. m. and heard the prosecutrix complaining to his wife that someone had done something "bad to her." Shortly thereafter, the prosecutrix saw defendant walking alongside her home with an ice cream cone in his hand. She pointed the man out to the boatswain, who went outside and asked defendant if he had taken the child into the abandoned house. Defendant replied that he had not, but stated that he had asked her if she wanted an ice cream

cone. During the conversation defendant offered the boatswain a drink from a bottle of whiskey.

Defendant testified in his own behalf, stating that at the time of the alleged offenses he had been in a saloon. After drinking some beer he proceeded to his home, situated near that of the prosecutrix. Defendant testified that on the way home he purchased a bottle of whiskey and an ice cream cone. The ice cream was for his landlord's grandchild. Defendant stated that he "always brought something home" for the child. As defendant walked by the prosecutrix's house, the boatswain asked defendant for the ice cream. Defendant offered the boatswain a drink of whiskey but the boatswain wanted the ice cream, saying "I want to take it in and give it to a child." Defendant replied, "That is what I got it for, a child." Nevertheless, the boatswain took the ice cream from defendant.

■ Defendant contends that the evidence is insufficient to support the verdict, on the ground that the testimony of the prosecutrix is "so vague, uncertain and contradictory as to clearly indicate her inability to accurately remember and relate facts, and by reason thereof her testimony is not worthy of belief." As illustrative of his contention, defendant points to the prosecutrix's testimony that there are 12 days in a week; that the incidents complained of occurred in November or December, whereas they actually occurred in September; and that the man who committed the acts was smaller than her father, whereas prosecutrix's father weighs about 80 pounds less than defendant. Defendant considers the prosecutrix's testimony impeached by her statements during cross-examination that defendant wore a red necktie, whereas she testified at the preliminary examination that she did not think he wore a necktie. Defendant also contends that the prosecutrix was coached on the grounds that three persons (presumably one or two police officers and a representative of the district attorney) helped her "remember her story" and that she testified that she knew the incidents occurred on a Saturday because her mother told her so.

In all its important phases, the prosecutrix's story is coherent and consistent. Her version of the incident remained unimpeached in all its essentials on cross-examination. She declared unequivocally that her mother did not tell her what to say. The statement by the prosecutrix that about three persons helped her "remember her story" was in the form of an affirmative response to a question put by defendant on

cross-examination. A reading of the entire record does not reveal instances of coaching, except in the use of the words "private parts" by the child. The defendant could show no more than that the prosecutrix had discussed the affair with several persons in authority. Since the testimony of the prosecutrix was, so far as the record shows, worthy of belief, minor inconsistencies not destructive of her story were for the jury to pass upon.

Defendant contends that evidence prejudicial to the defendant was erroneously admitted. A police officer testified that on September 15th, the day of the offense, he was taken by the prosecutrix to the abandoned house where the child showed him how "she entered the house with the man, unknown to us at that time, and showed us where he had set her on the table and also where he had laid her on the couch in the kitchen." Defendant contends that this testimony, even if considered as a "fresh complaint," went too far in that it contained the details of the complaint, instead of the fact of complaint and nothing more, and that it was inadmissible hearsay. Defendant, however, did not object to the admission of the foregoing evidence, and it would be technical in the extreme to hold that the officer's repetition of the child's statement in this case was anything but a minor incident in the trial, without importance when the record is read in its entirety.

Defendant contends that the admission of evidence pertaining to certain nonjudicial identification of defendant was erroneous. The prosecutrix testified that she identified defendant in a police lineup, and a police officer testified that he was present when the prosecutrix made the identification. Here again, defendant made no objection to the introduction of the testimony of which he now complains, but even if he had this evidence of previous nonjudicial identification would have been admissible.

"Ordinarily, when a witness is asked to *identify* the assailant, or thief, or other person who is the subject of his testimony, the witness' act of pointing out the accused (or other person), then and there in the courtroom, is of little testimonial force. After all that has intervened, it would seldom happen that the witness would not have come to believe in the person's identity. The failure to recognize would tell for the accused; but the affirmative recognition might mean little against him.

"The psychology of the situation is practically the same as

when Recent Contrivance is alleged. To corroborate the witness, therefore, it is entirely proper . . . to prove that *at a former time*, when the suggestions of others could not have intervened to create a fancied recognition in the witness' mind, he recognized and declared the present accused to be the person. If, moreover (as sometimes is done) the person was then so placed among others that all probability of suggestion (by seeing him hand-cuffed, for example) is still further removed, the evidence becomes stronger. The typical illustration is that of the identification of an accused person at the time of arrest . . . ." (4 Wigmore, Evidence (3d ed.), p. 208.)

The foregoing rule stated by Wigmore is not accepted in all jurisdictions, but the weight of recent authority is in accord with his views. (See, 1 Wharton's Criminal Evidence (11th ed.), p. 691; anno., 70 A.L.R. 910.) Conflicting lines of authority have arisen in California on this point. One group of cases holds that the admission of evidence of previous identification is erroneous, but in each case the defendant either failed to object or the court held that the error was not prejudicial. (*People* v. *Cotton*, 117 Cal.App. 469, 472 [4 P.2d 247]; *People* v. *Covington*, 121 Cal.App. 61, 65 [8 P.2d 490]; *People* v. *Lavender*, 137 Cal.App. 582, 592 [31 P.2d 439]; *People* v. *Dyer*, 30 Cal.App.2d 590, 593 [86 P.2d 852].) Another group of cases holds that testimony of previous identification is admissible, particularly where the eyewitness has first identified the defendant in the courtroom. (*People* v. *Hale*, 64 Cal.App. 523, 527 [222 P. 148]; *People* v. *Garcia*, 83 Cal.App. 463, 468 [256 P. 876]; *People* v. *Savage*, 66 Cal. App.2d 237, 245-246 [152 P.2d 240]; *People* v. *Richardson*, 74 Cal.App.2d 528, 542 [169 P.2d 44].) The only case decided by this court that deals with the question holds without discussion that such identification is admissible. (*People* v. *Sieber*, 201 Cal. 341, 349 [257 P. 64].) We therefore conclude that the evidence by the prosecutrix that she identified defendant in a lineup after the offense was admissible to corroborate her story and to rebut the suggestion that her identification at the trial was the result of recent contrivance. The same considerations apply to the testimony of the police officer that he saw the witness identify defendant.

The boatswain was permitted to testify, over objection, that the child pointed the defendant out to him shortly after she complained of defendant's acts, and at the time she saw him walking near her house carrying the ice cream cone.

Again, the identification of defendant by the prosecutrix is admissible to corroborate her testimony. Defendant contends, however, that the identification is unreliable on the ground that the prosecutrix identified not himself but the ice cream; that she merely associated him with the wrongdoer because he was carrying an ice cream cone. Defendant's argument that the identification was erroneous constitutes the basis of his defense and was resolved against him by the jury. The identification was not unreliable, and it was properly admitted for the consideration of the jury. The identification was made during or immediately after the child's complaint to the boatswain, and there is no indication that the child was coached when she pointed out the defendant to the boatswain. There are doubtless many instances where previous identification would be inadmissible because of the unreliable character of the identification, but here the prosecutrix's recognition of defendant occurred only a short time after the offense, and it was made independently on her part.

■ The boatswain testified that he saw defendant outside the house soon after the incident and that defendant admitted purchasing the ice cream cone for the prosecutrix. He also testified, without objection that he identified defendant in a police lineup as the person to whom he spoke outside the house. Here, again, the testimony of previous identification was admissible to corroborate the witness's testimony of identification at the trial.

■ It is contended that defendant was improperly convicted of violating both section 288 and section 288a of the Penal Code; that under the rule expressed in *People* v. *Greer*, 30 Cal.2d 589 [184 P.2d 512], defendant should have been convicted only of a violation of section 288. In *People* v. *Greer*, the defendant was convicted at his first trial of a violation of Welfare and Institutions Code, section 702 (contributing to the delinquency of a minor) and at a later trial of violations of Penal Code, section 261(1) (statutory rape) and section 288 (lewd and lascivious conduct). We held that if the act upon which these charges were based was the same for all three offenses, defendant could be convicted only of the section 702 offense since that offense is included in the offenses defined by section 288 and section 261(1). We further held that since section 288 specifically includes acts constituting other crimes mentioned in part one of the Penal Code, a person cannot be convicted of both a violation of section 288 and a violation of section 261(1) for the same act. The reason-

ing of the Greer case would apply to the present one if the charges in both counts were based upon the same act, since section 288a is in part one of the Penal Code. We have concluded, however, that both counts in the present information are based upon separate acts.

The opinion in *People* v. *Greer* states that: ''The divisibility of acts in cases involving sex offenses is not easily susceptible of exact definition. The cases show no uniformity in this field, and there are many instances of artificial distinctions. The rule can be set down for the guidance of the trial court in the present case, however, that if the touching of the prosecutrix's body charged in the first information [charging a violation of section 702] was essentially such touching as would be considered a part of the rape itself, it could not serve as a basis for a separate conviction. If, on the other hand, it was clearly not a part of the rape, but a part of a separate course of conduct, it could be held a separate offense.'' (*People* v. *Greer, supra,* at p. 600; see also, 57 Yale L.J. 132.) We stated also that the defendant in that case could not be convicted of violations of both section 261(1) and section 288, because the act forming the basis for the charge under section 261(1) was the same as the act forming the basis for the charge under section 288. ''Except for the rape itself, the only act of which she accused defendant was the forcible removal of her underclothing immediately preceding the rape. To hold that the removal of the prosecutrix's underclothing constitutes an act separate from the rape, however, would be artificial in the present context and would permit double punishment not authorized or contemplated by section 288.'' (*People* v. *Greer, supra,* at p. 604.)

In the present case defendant committed certain acts that could be considered rape or attempted rape; these acts clearly support the conviction for violation of section 288. The effect of the amended section 288 is to permit the charging of lewd and lascivious conduct on the basis of acts that also constitute other crimes provided for in part one of the code. (*People* v. *Greer, supra,* at p. 602.) In addition, however, defendant also committed certain acts denounced by section 288a. Thus, this case is factually dissimilar to *People* v. *Greer.* Here, defendant could have been convicted of two crimes without resort to section 288; in *People* v. *Greer,* the defendant could have been convicted only of a violation of either section 261(1) or section 288, for the basis of his conviction in either case would depend upon the same act.

It is true that the acts in the present case were all committed within a relatively short time. Nevertheless, defendant committed acts separately denounced in two code sections, independent of section 288, and these offenses are not necessarily or even normally associated with each other.

The acts forming the basis for the charge under section 288 were not mere fondling and touching preparatory to the commission of the acts denounced by section 288a. No question would arise if defendant had been charged with rape or attempted rape and with a violation of section 288a, since there is evidence that he committed both offenses and neither is included in the other. The same result may be reached by charging one of the offenses under section 288. Under such circumstances we are compelled to conclude that the two offenses charged in the information are separate ones, just as mayhem can be separate from rape even though it may have occurred during an episode involving rape.

The judgment and order are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.