[Crim. No. 2754.   Third Dist.   Sept. 25, 1958.]

THE  PEOPLE,  Respondent,  v.  DAVIS  CARL  ATKINS, Appellant.

· Davis Carl Atkins, in pro. per., and Ralph D. Drayton, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

VAN DYKE, P. J.—The appeal herein is from the judgment and order denying motion for new trial following a jury verdict finding appellant guilty of the crime of burglary of the first degree.

Appellant contends that the evidence was insufficient to support the verdict, that the trial court committed prejudicial error in the admission of evidence, in the giving of certain instructions, and in refusing appellant's counsel the right of preliminary cross-examination before admitting evidence of prior identification. Appellant also contends that the district attorney was guilty of prejudicial misconduct. Before discussing these contentions we will summarize the evidence upon which the prosecution relies.

This we will do in line with the well-settled rule that questions pertaining to the weight of evidence and the credibility of witnesses are matters which rest entirely with the jury and that before a challenge to the sufficiency of the evidence can be upheld it must appear that on no reasonable hypothesis is there sufficient evidence to support the conclusion reached in the trial court. (*People* v. *Hills*, 30 Cal.2d

694 [185 P.2d 11]; *People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778].)　■　There was testimony that at about 8:45 p. m. on September 19, 1956, the front doorbell of a Mrs. Siegfried was rung. She resides with her husband and son in a two-story house located at the intersection of Walnut and Lee Streets in the City of Lodi. She was in an upstairs bedroom and had been in bed for about 30 minutes when she heard the ring. Due to her ill health she disregarded the bell, but within a few minutes heard the rear door buzzer sound. She then arose and went to the window and looked out. The lights in the house were out and the doors were unlocked; it was a bright moonlight night and the area of Walnut and Lee Streets was lighted by two street lamps. There were no screens on the windows and no objects that would obstruct the view from Mrs. Siegfried's bedroom window to the ground at the rear of the house. As Mrs. Siegfried watched, she saw a man, whom she later identified as appellant, coming from the back of the house carrying a brown object over one arm and holding several objects in his hands. She saw the man take a few steps, then stop and throw a white object, and another article that made a thud when it landed, under an orange tree in the yard. She then saw the man proceed down Lee Street towards Oak Street. After the man left she searched under the orange tree and found a white purse belonging to her, and a jug or vase that had been on her dining room table. Returning to the house she discovered that there was missing a black patent leather purse which had contained a $20 bill, a $10 bill, and a $5.00 bill. She also discovered that her husband's suit coat, which had been hanging on a dining room chair, was gone. She called her husband at his music store in town, and informed him and their son of the burglary. She gave them a description of the burglar as a man of slight build, with a thin face, dark, "slick" hair, who was wearing suntanned trousers and a dark green jacket. Mr. Siegfried notified the police and gave them his wife's description of the burglar. He and his son then drove down Oak Streets towards Lee Street. They encountered a man they identified as appellant as he was crossing an intersecting street. They parked their vehicle and watched him cross the street. As he went, he was counting some green objects in his hands which they described as looking like greenbacks. They followed this man along Oak Street to the Rex Pool Hall which he entered about 9:10 p. m. They then went to the police station, where they reported appellant's where-

abouts to the officers who requested them to get Mrs. Siegfried over to the pool hall for purposes of identification. The police went to the pool hall where they found appellant playing poker. There was testimony that appellant had entered the pool hall and purchased a beer, using a five or ten dollar bill to pay for it; that he then went into an adjoining room where a poker game was going on and joined the game at about 9:15 p. m.; that during 30 minutes of play he made two five dollar purchases of poker chips. There was testimony that at about 9:30 p.m. two officers, having received Mrs. Siegfried's description of the man who had left her yard, went to the pool hall and found appellant. They said he fitted the description they had received. They took him from the card game to the street where Mrs. Siegfried and her family were waiting in their automobile. Mrs. Siegfried there identified him as the man she had seen in her yard and her husband and son identified him as the man they had followed to the Rex Pool Hall. He was arrested and searched. The officers found a $20 bill, five $1.00 bills, and over $1.00 in change. When questioned about the money, appellant said he had been in Lodi four days, had come from Sacramento, and possessed $18 on his arrival; that he had worked two days since, earning a total of $15.50. When requested to account for the $20 bill he was unable to do so. Mrs. Siegfried's black patent leather purse was found on Oak Street about 100 feet from Lee Street. Some of the contents of the purse were found scattered on the sidewalk along Oak Street. Mr. Siegfried's coat was found on a lawn adjacent to the Oak Street sidewalk. There was testimony by the Siegfrieds and the arresting officers that when arrested appellant was wearing a dark green jacket.

From the foregoing recital of evidence it is apparent that appellant's contention the evidence was insufficient to support the verdict is without merit. While appellant seriously challenges the ability of Mrs. Siegfried to identify him as the man she saw in her yard after the doorbells had been rung, the argument goes merely to the weight of the evidence. It was for the jury to determine whether, under the circumstances as described in the testimony, Mrs. Siegfried had such a view of appellant as to enable her to make at the trial the positive identification which she did make. In addition to that identification the record as related contains many supporting circumstances. It is unnecessary to reiterate them. We hold the evidence was sufficient to support the jury's verdict.

■ Appellant contends that People's Instruction Number 13 should not have been given. Therein the court told the jury that, although mere possession of stolen property, however soon after the taking, unexplained by the person having possession, was not sufficient to justify conviction, it was a circumstance which the jury might consider in connection with other evidence in determining the question of guilt or innocence. When arrested, appellant was in possession of a $20 bill and there was testimony to support an inference that a $20 bill had been taken from Mrs. Siegfried's purse by the man whom she had seen in her yard. This circumstance is coupled with the appellant's failure to satisfactorily account for his possession of such a bill. While of little weight, this evidence was nevertheless to be considered by the jury along with other circumstances in determining the issue of guilt. (*People* v. *Arbaugh,* 82 Cal.App.2d 971 [187 P.2d 866].) The giving of the instruction complained of was not error.

■ Appellant complains of the court's permitting rebuttal evidence concerning the jacket worn by appellant on the night of the burglary. The jacket had been introduced in evidence and identified by a number of witnesses as the one which appellant had been wearing on that evening. Appellant testified that he had just recently bought the jacket at a Sacramento department store. In rebuttal, a Mrs. Gatzert testified that she had bought the jacket for her son and had written his name inside it with India ink. The name was still there. She testified further that the jacket had either been lost by her son or stolen from him several months prior to the burglary. There was no error in permitting the rebuttal testimony. Respondent argues that the district attorney introduced the rebuttal testimony merely for the purpose of rebutting appellant's testimony concerning his acquisition of the jacket. The rebuttal testimony was properly admitted in view of appellant's testimony and the fact that it might incidentally connect him with another crime than the one charged was not a circumstance sufficient to justify its exclusion. (*People* v. *Sizelove,* 134 Cal.App.2d 104 [285 P.2d 4].)

■ Appellant contends for prejudicial error in the court's admitting evidence of extrajudicial identification of appellant by Mrs. Siegfried. One of the arresting officers, after Mrs. Siegfried's positive identification of the appellant during the trial, testified concerning the circumstances of the arrest and during that testimony stated that the officers had taken appel-

lant out of the pool hall and to a car in which the Siegfrieds were seated; that he informed the appellant he was taking him there for purposes of identification; that when they were near the Siegfried car the occupants all indicated by finger motion or by head nods that appellant was the man Mrs. Siegfried had seen in her yard and that the other two had seen proceeding down Oak Street to and entering the pool hall. Objection was made to that part of the testimony which included testimony of the extrajudicial identifications and the conduct of the prosecuting attorney in eliciting the testimony was assigned as prejudicial misconduct. Under the circumstances it was not error to permit the testimony objected to. (*People* v. *Slobodion*, 31 Cal.2d 555, 559-560 [191 P.2d 1].) The circumstances here are similar to those recited in the Supreme Court's discussion of the point in the Slobodion case.

█ Appellant contends that the trial court committed prejudicial error by refusing his request for a *voir dire* examination of Mrs. Siegfried at the time People's Exhibit Number 8 was introduced in evidence. This exhibit is a photograph showing the area at the rear of Mrs. Siegfried's home, as she observed it from her upstairs bedroom window on the night of the burglary. The photograph shows a peace officer standing in a location marked by Mrs. Siegfried as that where she observed appellant on that night. Mrs. Siegfried had been shown the photograph and had testified that the officer depicted was standing where she had first seen appellant; that the photograph showed the window from which she had looked and the yard below which she had seen; that before the picture had been taken as depicting what she saw as she looked down she had assisted in placing the officer in the position occupied by the appellant. She said: "I could see everything that you have in that picture." The picture was then offered in evidence for illustrative purposes only and was admitted by the court over the objection of appellant's counsel for that limited purpose. From the record we think the jury must have fully understood this. Counsel asked for permission at that time to examine Mrs. Siegfried touching the fidelity of the picture as such illustration. The court refused at that time to permit this. While it would have been well to allow counsel's request, we think there is no error and certainly no prejudicial error in its refusal. On cross-examination counsel examined Mrs. Siegfried extensively touching the fidelity of the photograph and her ability to see under the conditions existing at the time of the burglary.

Appellant cites two instances of what he claims to have been misconduct on the part of the prosecuting attorney. The first concerned the elicitation of testimony of extra-judicial identification hereinbefore discussed, and the second had to do with testimony obtained from the same officer with regard to the distance from the Siegfried home to the Rex Pool Hall and the time required to walk it. The officer said: "This distance was measured by an automobile speedometer . . . it showed 5/10ths of a mile . . . from the sidewalk area and where the defendant was observed, seen leaving, to the front of the Rex Pool Hall." On motion the court struck out the reference to defendant's having been seen leaving the Siegfried home. The officer then testified as to the length of time it had taken him to walk the distance and that he had walked it at a normal walk or rate. Motion to strike was based upon want of evidence that appellant had walked the indicated route and counsel for the People said, "the defendant was seen walking away from this house in this direction here, up to Oak Street." The making of that statement was assigned as misconduct. In view of the fact that at the time of the occurrence of this incident in the trial Mrs. Siegfried had testified that she saw the appellant leave her premises and proceed down Oak Street and Mr. Siegfried had testified that he and his son had seen him walking down Oak Street and had followed him to the Rex Pool Hall, the inference could well be drawn that appellant had been seen walking the route indicated and that counsel's statement to that effect was at least inferentially correct. However, appellant's counsel asked the court to admonish the jury to disregard the statement and the court did so. It would have been better for counsel for the People to have stated his conclusion that the appellant had been seen walking the route as mere argument from the preceding testimony, but we are satisfied that there was nothing worthy of the name of misconduct and certainly nothing prejudicial in the assignment of error under discussion.

There are no other assignments of error which merit discussion.

For the reasons heretofore stated, the judgment and the order appealed from are affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 19, 1958.