[Crim. No. 6701.   Second Dist., Div. One.   Nov. 5, 1959.]

THE PEOPLE, Respondent, v. MARVIN CHARLES EDWARD FORD, Appellant.

---

*Assigned by Chairman of Judicial Council.

John Paul Hare, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was convicted by a jury of selling heroin in violation of section 11500, Health and Safety Code, as charged in a grand jury indictment, which further alleged two prior felony convictions admitted by him before trial.

The evidence discloses that on Saturday, June 21, 1958, around 10:30 a. m., Deputy Sheriff Burley, an undercover narcotics officer, with one Hendricks, drove to 9508 Success Avenue. Hendricks left the car, entered the house at that address and upon his return brought with him the defendant. As the latter approached the window on the driver's side of the car the officer said "I would like to get some stuff." They discussed the amount, how it was sold and the price, and the officer offered to buy three caps. Defendant took from his pocket three caps of heroin and handed them through the window to the officer, who gave him $10. Defendant returned $1.00 change. The officer then said he had been trying to buy a one-half ounce of "stuff" all that day, but everyone was out. After defendant made contact with a third person by telephone he and the officer then negotiated for a one-half ounce for $125. The officer left saying he had to go home to get the rest of the money.

In his defense which amounted solely to a claim of mistaken identity, defendant denied he had ever seen Burley prior to the first time in court or had any transaction with him. On cross-examination, he attempted to develop an alibi for himself, claiming he had worked on June 21 wrecking automobiles for one Barber who paid him out of pocket, and had left home that morning at 8 a. m., spending the next three days at his girl friend's house; and tried to establish a defense of mistaken identity by testifying he had a brother, Genie "Babe," who also lived at his home on Success Avenue

who closely resembled him and looked "almost identical." Neither Genie "Babe" nor defendant's employer, Barber, was called as his witness, nor was defendant's girl friend who was in the courtroom. Defendant, however, did call Hendricks, a convicted felon, and asked him if he had ever seen Burley in his company on June 21st. Hendricks refused to answer the question on the ground "it might incriminate" him; but said he knew Genie "Babe" and saw him with Burley on that day. Spencer, another defense witness, was called to confirm defendant's whereabouts at work on June 21st. He said he remembered the date because he had an appointment as an out-patient with the county hospital on that day and called to change it to the 26th, which appointment he kept. However, on rebuttal, the registrar of the county hospital testified that although Spencer was an out-patient, his last appointment was June 17th and he hadn't been there since; no appointments are made for Saturday; none had been made for him on the 21st; and no appointment had been made by him for June 26th, nor did he appear on that date.

Appellant's sole contention is that the trial court erred in admitting into evidence his "mug" photograph. He argues that since it showed front and profile views of his head, beneath which appeared numbers and "SHERIFF'S DEPT., LOS ANGELES," it placed him in an unfavorable light and produced a prejudicial effect "bringing his past record to the attention of the jury."

This issue arises out of the deputy's use of defendant's photograph in the sheriff's office within one hour after the offense was committed to aid him in identifying the man whose name he did not know, who sold him the heroin on June 21st. Evidence of a prior identification presents the same general problem as that proffered by a prior statement—it is inconsistent if the identifying witness testifies differently at the trial, and consistent if he makes the same identification. However, before discussing the cases culminating in the rule in California relative to the admissibility of previous non-judicial identification of an accused, we review the manner in which the prior identification was made.

At the outset, and on direct examination as a part of the People's case, Deputy Burley identified the defendant as the person who sold him heroin on June 21st. On cross-examination, he was widely questioned concerning the appearance and identification of the man with whom he had the transaction. The deputy testified that defendant wore a long sleeved

shirt and light colored pants and there was nothing unusual about his appearance, but he could recall little else about him; and that defendant approached his automobile three or four times and on both the first and second time he spent one-half to one hour with him. Defense counsel, Mr. Littlefield, then asked the deputy: "Am I correct, sir, in assuming the only time you saw the defendant other than being in court was on June 21?" The answer was: "In person, yes." He further testified that although he had negotiated a sale with defendant on that date, he had never actually been introduced to him. On redirect examination, the district attorney then asked Deputy Burley: "Now, Mr. Burley, you told Mr. Littlefield here you had not seen the defendant from June 21 until you saw him in court here several weeks ago, and you added the phrase 'in person.' " "A. That is correct." "Q. Now, sometime after June 21st of this year, 1958, did you see what appeared to be a photographic representation of the defendant's face?" "A. I did. In fact, it was on the same day, June 21st." Further examination without objection developed testimony that approximately one hour after the transaction on June 21st, the deputy saw defendant's photograph in the record bureau drawer of the sheriff's office and identified him as the man who sold him the narcotic; that when he testified before the grand jury, defendant was not present and he again identified him by the same photograph; and that there is no doubt in his mind that it was the defendant who sold him the capsules on June 21st. At the close of the prosecution's case and over the defendant's objection, the photograph was received in evidence as People's Exhibit 2. However, it was not shown to the jury then or until the entire case was submitted to it for its deliberation.

Defendant admitted on cross-examination he had been convicted of two felonies in California—conspiracy to violate the Marihuana Tax Act in the United States District Court, and a violation of section 11500, Health and Safety Code in the Superior Court of Los Angeles County, and had served a prison term for each.

The major issue before the jury was that of identification. On cross-examination of the deputy, the defense sought to discredit his identification of the defendant as the person with whom he had the transaction. In examining him extensively concerning his appearance and identity, defendant invited the subsequent effort of the prosecution to show that there could be neither a mistake on the deputy's part, nor a recent con-

trivance by him in identifying the defendant; and to strengthen the deputy's testimony and reestablish his identification as positive, it offered the defendant's photograph to show that immediately after the commission of the offense, at a time when defendant's appearance was freshest in his mind and the deputy was least subject to suggestion, he positively identified the man as the one shown in the photograph.

Appellant cites *People* v. *Cotton*, 117 Cal.App. 469 [4 P.2d 247]; *People* v. *Covington*, 121 Cal.App. 61 [8 P.2d 490]; *People* v. *Blankenship*, 171 Cal.App.2d 66 [340 P.2d 282], and *People* v. *Marvin*, 48 Cal.App.2d 180 [119 P.2d 413], for the proposition that evidence of previous identification is inadmissible; they offer no direct ruling on the question before us for in these cases defendant failed to object, the court held the error was not prejudicial, or the photograph was that of a coconspirator, not the defendant.

The rule long recognized and cited by the author in 4 Wigmore, Evidence (3d ed.), at page 208, acknowledges the value and admissibility of previous nonjudicial identification, and is likened by him to the rule relating to recent contrivance: "To corroborate the witness, therefore, it is entirely proper . . . to prove that a former time, when the suggestions of others could not have intervened to create a fancied recognition in the witness' mind, he recognized and declared the present accused to be the person." ██ Thus the courts in this jurisdiction generally admit prior identification to corroborate the witness' present testimony relative to identity. Without discussion, *People* v. *Sieber*, 201 Cal. 341, followed the rule at page 349 [257 P. 64]: "He (appellant) contends that the prosecution was permitted to 'bolster up' the testimony of the witness by showing that, on a prior occasion and at the police station, he had done the same thing (identified defendant and his coat). The record does not bear the construction placed upon it by appellant, and we find nothing objectionable in the evidence admitted." Similar language appears in *People* v. *Savage*, 66 Cal.App.2d 237, at page 245 [152 P.2d 240]: "But after a culprit has been identified in the courtroom it is competent proof for the witness to relate that on prior occasions, either before or after the crime, he had seen the prisoner and knew him to be the same person who had committed the offense (Citations)." Citing Wigmore on Evidence, the court in *People* v. *Richardson*, 74 Cal.App.2d 528, held at page 542 [169 P.2d 44]: "It is perfectly proper to permit eyewitnesses who identify the defendant in the court room

.to corroborate their testimony by a statement of the fact of a prior identification which was all that was done here.''

This problem, discussed at length in *People* v. *Slobodion,* 31 Cal.2d 555 ·[191 P.2d 1], arose out of the testimony of a prosecutrix that she had previously identified defendant in a police lineup. Appellant contended that the admission of evidence pertaining to her nonjudicial identification of him was erroneous. Said the court at page 560 : ''We therefore conclude that the evidence by the prosecutrix that she identified defendant in a lineup after the offense was admissible to corroborate her story and to rebut the suggestion that the identification at the trial was the result of recent contrivance.''

· Authorities bearing directly on this point involve for the most part identification prior to court appearance by way of ·police show-up or of his person at a place other than the police station. Appellant's real objection seems to be the manner in which the prior identification was proved, by the ,introduction into evidence of the ''mug'' photograph, which he claims imputed to him a prior criminal record. ■ Generally, if evidence be material and relevant to an issue in a .criminal trial, even though it tends to be prejudicial, it is nevertheless admissible when its probative value outweighs the possible prejudicial effect (*People* v. *Cheary,* 48 Cal.2d 301 [309 P.2d 431]) ; and a determination thereof lies within the ·sound discretion of the trial court (*People* v. *Reese,* 47 Cal.2d 112 [301 P.2d 528]). ■ We find no abuse of this discretion here; in fact, in the light of the record, any prejudicial effect seems doubtful for the most appellant can claim is that the photograph disclosed that he had a criminal record. This the ·jury knew long before it ever saw the photograph, from both the testimony of the deputy received without objection, and the admission of the defendant himself. Before the photograph was admitted into evidence, Burley testified that in the sheriff's office one hour after the commission of the offense he saw defendant's photo and identified him from it; and defendant admitted on cross-examination he had a criminal record, having been convicted in California of two felonies, describing them, for each of which he served a prison term. Before the photograph was ever submitted to it and before it saw the inscription below the likeness of defendant, the jury was well acquainted with appellant's criminal past. The photograph could not have told it any more than it already knew from the evidence properly admitted. In any event, it is apparent from the record that the strength of the evidence

against defendant is such that the admission of the photograph could not have caused a miscarriage of justice within the meaning of California Constitution, article VI, section 4½, and does not constitute a ground for reversal. (*People v. Hughes*, 123 Cal.App.2d 767 [267 P.2d 376].)

It appearing that the judgment of conviction recites "no finding having been made as to the prior convictions" and the reporter's transcript of the proceedings on pronouncement of judgment correctly recites that the prior convictions were admitted by defendant, we direct that the judgment be corrected to reflect the true fact.

For the foregoing reasons the judgment is affirmed; and amended by striking out the words: "no finding having been made as to the prior convictions" and adding in lieu thereof the following: "and defendant having admitted that under the name of Marvin C. Ford, he was convicted of the crime of conspiracy to violate the Marihuana Tax Act, a felony, in the District Court of of the United States, in and for the Southern District of California and the judgment of said court was on or about the 4th day of June, 1950, pronounced and rendered and said defendant served a term of imprisonment therefor in the Federal Prison; and under the name of Marvin C. E. Ford he was convicted of the crime of violation of Section 11500, Health & Safety Code, a felony in the Superior Court of the State of California, in and for the County of Los Angeles, and the judgment of said court was on or about the 6th day of January, 1954, pronounced and rendered and said defendant served a term of imprisonment therefor in the State Prison."

Wood, P. J., and Shea, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.