4 Cal.Rptr. 925]

[Crim. No. 3699.   First Dist., Div. Two.   May 17, 1960.]

THE PEOPLE, Respondent, v. ALFRED P. KERNS, Appellant.

Kenneth C. Zwerin, under appointment by District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Joseph I. Kelly, Deputy Attorneys General, for Respondent.

DRAPER, J.—A jury found defendant guilty of kidnapping for purposes of robbery and of two counts of armed robbery. He appeals from order denying new trial and from the judgment.

A tall man and a man wearing a patch over one eye entered the Belmont Casino at about 1:50 a. m. The man wearing the eye-patch displayed a gun and announced "This is a holdup." The two bound Hammons, the bartender, and a visitor, Miss Gallagher. The robbers took a wallet containing $14 from Hammons. They obtained some $200 from the change drawer, and found from Davis, the manager, that the remainder of the money was in a locked safe. Davis did not have the combination, but said that a coowner, Mrs. Cook, did have it. Hammons and Miss Gallagher were left under control of the tall robber, who was armed. The eye-patched robber compelled Davis, at gunpoint, to drive to Mrs. Cook's residence. She was not at home, but the robber talked to her roommate, Miss Salvino. At the robber's direction, and after being warned that the hostages would be harmed if she notified the police, Miss Salvino agreed to telephone Mrs. Cook and have the latter telephone the Casino. The robber returned Davis to the casino, where the two robbers and three victims remained until about 3 a. m., when the tall robber left, taking the stolen change money with him. The eye-patched robber remained, holding the three victims at gunpoint, until 7:45 a. m., when Mrs. Cook 'phoned. She told Davis the combination. At the robber's direction, he opened the safe. The patched robber removed its contents, something over $3,000, and forced Davis to drive to Golden Gate Park, in San Francisco. There the robber forced Davis to alight and drove off in Davis' car.

At trial, Davis, Hammons, Miss Gallagher and Miss Salvino all identified appellant Kerns as the robber who wore the eye

patch. Appellant did not testify. He was convicted of robbery of Hammons, robbery of Davis, and kidnapping of Davis.

[██] Each of the four who identified appellant as the robber testified, over objection, that he had made like identification at a lineup staged after appellant's arrest. Error is asserted in the admission of this evidence. The argument is that since there was no evidence that appellant was free to deny the statements identifying him, they were not admissible as accusatory statements. The claim is without factual basis. One of the witnesses testified that when she identified appellant at the lineup, he stepped forward and asked if she meant to refer to him. Thus we cannot accept his present argument that he could not hear or was in some way restrained from answering those who identified him at this same lineup. Further, the evidence was admissible on a theory wholly distinct from that under which accusatory statements are admitted. The evidence tended to corroborate the courtroom identification by each of these witnesses. The rule allowing such evidence, stated by Wigmore (4 Wigmore, Evidence (3d ed.) p. 208), has been adopted in California (*People* v. *Slobodion,* 31 Cal.2d 555, 559-560 [191 P.2d 1] ; *People* v. *Bennett,* 119 Cal.App.2d 224, 226 [259 P.2d 476]).

[██] More serious is the claimed error in admitting evidence of police officers that one Fairchild had admitted he was the taller of the two robbers. Fairchild was not charged or tried with appellant. He was not a witness. This was rank hearsay, and the objections to it should have been sustained. Appellant claims prejudice in that identification of him as the robber who wore the eye-patch was the sole issue in the case. Mrs. Fairchild testified that in the early morning of the date of the robbery (enough after 3 a. m. to have permitted the tall robber to have reached his home), Fairchild twice telephoned appellant and put Mrs. Fairchild on the 'phone to urge appellant to come home. This dovetailed with other testimony that appellant, while holding his hostages at the casino twice received telephone calls, his replies to which indicated that he was being urged to leave and go home. If the question of identification were at all close, prejudice would be clear. But here appellant was identified as the robber by Davis, who had been compelled to remain in his presence for more than six hours on the night of the robbery; by Hammons and Miss Gallagher, who observed him for almost as long; and by Miss Salvino, who had a fairly extended conversation with him. None of these witnesses had only the brief and frightened

glimpse which so often is the sole basis for identification. All stood well the test of cross-examination. We cannot conclude that the verdict would have been more favorable to appellant if the evidence of Fairchild's admission had been excluded, as it should have been.

It is true that some identifying witnesses commented upon an appearance of limitation of movement of the robber's left hand or arm, and upon a slight foreign accent in his speech. But none based his identification upon these factors. All testified that in fact he used his left hand to hold and brandish the gun. In view of his use of an unneeded eye patch as an obvious attempt at disguise, it seems apparent that the witnesses regarded these elements as feigned for purposes of disguise.

We cannot refrain from pointing out that this obvious hearsay could serve no purpose for the prosecution. If needed to establish identity, it would be reversible error. If unnecessary, it but wasted the time of court and counsel and contributed to an unnecessary appeal. Some sensible tempering of prosecution zeal can be recommended. Here there was no need to use a sledge hammer on an already well-driven nail.

Judgment and order denying new trial are affirmed.

Kaufman, P. J., and Good, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.