[Crim. No. 1553. Fourth Dist. July 18, 1960.]

THE PEOPLE, Respondent, v. ROBERT MILLER, Appellant.

C. A. Broderick for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

SHEPARD, J.—Defendant was tried by jury on charges of burglary and grand theft. He was found guilty on both counts and the burglary was fixed at second degree. From the judgment sentencing him to concurrent terms in the state prison and from the order denying his motion for a new trial, he appeals.

Defendant makes only two contentions on this appeal: First, that the evidence is insufficient to support the verdict; and, second, that the court erred in admitting evidence of identification of photographs.

## SUFFICIENCY OF EVIDENCE

As to sufficiency of evidence, this court is required to " 'assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury." (*People* v. *Newland,* 15 Cal.2d 678, 681 [1] [104 P.2d 778].) See also *People* v. *Merkouris,* 52 Cal.2d 672, 678 [1] [344 P.2d 1].

With this rule in mind, the record before us shows that defendant, about four or five days to one week before the occasion of the burglary, accompanied by "two or three other fellows," came into Don Cree's Men's Store at 6714 Brockton, Riverside, California (where burglary later took place). They walked through the store looking at suits and other merchandise, but did not buy anything. Witness Joe Patterson, a salesman in the store, at that time noticed defendant sufficiently to remember his peculiar high pompadour hairdress and his size

and style of walk. On October 19, 1959, at about 2:05 a.m. (about 18 hours prior to the burglary), Glade Linn, police sergeant of the nearby town of Rialto, stopped defendant and interrogated him about five minutes in connection with the car defendant was then driving. Defendant was wearing a pompadour hairdress and looked about the same as in a photograph shown the witness at the trial. At about 8 to 8:30 p.m. on the same day, Joe Patterson saw defendant (a Negro) with two other male Negroes all estimated to be of the ages of about 18, 19 to 23 years, looking at suits in the back of the store. Defendant is 22 years of age. Patterson then turned to a customer, and shortly thereafter saw the same three going out the back door of the store with one carrying a bundle of suits. Donald Cree, proprietor of the store, ran out the back door after them, and saw an old Buick he thought to be a dirty blue in color with a teardrop shape body being driven away without lights. The suit rack earlier in the evening had 16 to 18 suits on it, but after the burglary only four were left. The value of the stolen suits was $600. Cree identified a photograph of defendant's car as being the same Buick he saw leaving without lights. In the meantime Patterson called the police.

At 8:43 p.m., Officer Emanuel Flores, in response to a radio call, started looking for a car of the same description. A few blocks away he saw such a car and gave chase. Two men jumped out of the car while it was still traveling. The car, unguided, crossed the street, crashed and stopped. The motor was still running and the ignition keys were in the car. The suits were in the car. It ultimately proved to be defendant's car, and the same car as seen by Cree near the scene of the burglary. Patterson later picked out defendant's picture from a group of six photographs of different people exhibited to him by an officer. On October 23, Patterson personally identified defendant at the police station, and also identified him at the trial as one of the three persons involved in the burglary.

Pressed by defense counsel for a positive statement of identification, Patterson finally said "beyond a reasonable doubt, I believe so." His other answers were similar. At the preliminary examination he gave an answer that he would not say "positively and absolutely." At the time of defendant's arrest, he looked as though he had "just obtained a haircut." His high pompadour was gone. On interrogation on the night of October 23 by police officers, defendant at first positively claimed he had never been in Cree's store. He later admitted he may have been, but at the trial he again positively denied

ever having been in the store. He testified he had changed his style of haircut from the pompadour some four months previous to the burglary; that he had gone to his sister's home the night of the burglary about 6:30 or 7 p.m., locked his car ignition, took out the keys and stayed in his sister's house all night; that he discovered the next morning between 9 and 10 that his car had been stolen; and that he reported the car theft to the police about 11 a.m. on the morning of the 20th. His defense was denial and alibi.

 On this statement of facts we cannot say the evidence was not ample to support the verdict. The identification of the defendant and his ownership of the get-away car was clearly inculpatory. If the jury believed the testimony of Officer Linn respecting defendant's pompadour hairdress some 18 hours before the burglary, they must have believed that defendant's testimony respecting the elimination four months previously of defendant's pompadour was wilfully false and that he had the hair cut after the burglary as a means of confusing identification. The testimony that the keys were in the ignition at the time Officer Flores stopped the car after the burglary was some evidence (although not conclusive) that it had not been stolen. Defendant's partially conflicting story about never having been in Cree's store was an additional item for jury consideration, although entitled to little weight standing alone. It was not unreasonable for the jury to believe, under all the circumstances, the visit to the store by defendant a few days earlier was to "case" or look over the layout and the defendant entered the store on the day of the burglary with the intent to commit theft therein.

The alleged weakness of identification is a false quantity. Often the witness who is careful in his statements creates a much stronger conviction of veracity in the mind of the hearer than a witness who is overpositive. The jury saw and heard the witnesses. It was their function in the first instance, and that of the trial court on motion for a new trial, to weigh the evidence.

## PHOTOGRAPHIC IDENTIFICATION

 A review of the actual record does not support defendant's statements regarding the incident relating to objections to the questions asked Joe Patterson about photographic identification of defendant by Patterson. The only question that we can find objected to in the record in that respect was as follows:

"Q. At the time you were down there two or three days after that, did you look at some pictures? A. I did.

"MR. BRODERICK: I object. I would like to make an objection.

"THE COURT: The answer is stricken for the purpose of the objection.

"MR. BRODERICK: I object on the grounds that it's incompetent, irrelevant and immaterial."

On its face, this question was not only harmless but was a perfectly proper foundational question for any number of other legitimate questions. The trial court could not possibly foretell what other questions of a legitimate character might be asked on such foundation. Even though the questions which were later actually propounded on the subject of photographic identification might be considered objectionable, nevertheless no objections of any kind were made to any of them. Furthermore, in addition to making no objection to the questions which actually related to photographic identification, defense counsel himself repeated similar questions on cross-examination. Under these circumstances, we cannot properly charge the trial court with error. It may be also noted that the objection itself was insufficient in that the objection of hearsay was never made at any time. Counsel's brief has not given any transcript reference so that we have been compelled to read the entire record to discover what his point on appeal referred to.

The case of *People* v. *Covington,* 121 Cal.App. 61 [8 P.2d 490], cited by defendant, does not support defendant's contention under the facts of the case at bar. It does support the contention of plaintiff. Of the other cases cited by defendant, *People* v. *Cotton,* 117 Cal.App. 469 [4 P.2d 247], and *People* v. *Thorp,* 104 Cal.App. 379 [285 P. 916], involved situations in which the crucial questions were actually objected to. *People* v. *Dyer,* 30 Cal.App.2d 590, 593 [2] [86 P.2d 852], directly holds that no prejudicial error can be ascribed under circumstances similar to those here present. Thus our ruling would not be different even though the rule announced in *People* v. *Slobodion,* 31 Cal.2d 555 [191 P.2d 1], at the bottom of page 559, were changed. We have carefully read the entire record of the trial. We feel that as a whole it was fairly conducted and we find no prejudicial error.

The judgment and order denying motion for a new trial are affirmed.

Griffin, P. J., and Shea, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.