[Crim. No. 7003.    Second Dist., Div. One.    May 9, 1960.]

THE PEOPLE, Respondent, v. EARVIN ROBINSON,
Appellant.

Earvin Robinson, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David Cadwell, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of attempted robbery with a finding that defendant was armed at the time of the attempted robbery and of the denial of appellant's motion for a new trial.

In an information filed in Los Angeles County appellant was charged with a violation of section 211 of the Penal Code in that he did on April 26, 1958, attempt to rob J. J. Lestelle and Isabel Amato and further that at the time of the attempted robbery he was armed with a deadly weapon, namely a loaded revolver, in violation of section 664 of the Penal Code. Appellant pleaded not guilty. A jury found him guilty and further found that he was armed at the time of the offense. A motion for a new trial was denied.

Proceedings were suspended, appellant was granted probation, a part of the terms of such probation being that he spend one year in the county jail. The appeal is from the judgment and from the order denying the motion for a new trial.

A résumé of the facts is as follows:

On the evening of April 26, 1958, a worker in a liquor store received a call from a person whose voice she recognized as being that of the appellant who ordered some liquor to be delivered to 3015 Westview. The person so calling stated that his name was Riley and that he lived at the given address and that the telephone number there was REpublic 5-9359 and further that he wanted the person who delivered the liquor to bring with him change for a $50.00 bill. A second call was made to the liquor store by the same person—namely, the appellant. The employee at the liquor store stated to the caller that the delivery truck had broken down and that the man from the flower store next door would make the delivery. The liquor store employee called the REpublic exchange number which had been given to her and received no answer. She then contacted the police department and Officers Lestelle and Davis came to the liquor store. She told the officers what had occurred up to that time. She then provided the officers, who were in plain clothes, with a quantity of liquor and change for a $50.00 bill. The officers in an unmarked police car went to 3015 Westview. As the officers approached the named ad-

dress, Officer Davis was lying on the rear seat of the police car. Officer Lestelle stepped out of the car upon parking it and observed the address of 3017 Westview. He then walked back to the house numbered 3015 which was located toward the rear on the lot. The officer knocked on the door of the house numbered 3015 and a male voice from the inside thereof answered and Officer Lestelle then inquired if he was Riley and if he had ordered any liquor. The person on the inside of the house answered in the negative to both questions. Lestelle took his revolver out of his pocket and placed it between himself and the paper bag which contained the liquor.

While Officer Lestelle was at the house numbered 3015 Davis was watching him from the rear seat of the police car and at the same time caught sight of a person who was wearing a black fez and an insignia of some sort on a sleeve of his shirt. That person was then running. The person in the black fez went to the south side of the house numbered 3017 where he disappeared from Davis' sight. Davis next saw the person who was wearing the black fez on the back porch of the house numbered 3017½, dressed as heretofore indicated and with a white handkerchief around his face. The house numbered 3017½ was still farther to the rear of the lot upon which the other two houses were located.

At about that time Officer Lestelle was about a foot or two away from the porch of the house numbered 3017½. The black-fezzed and masked person was standing with his body flush against the building facing west. Davis left the police car and saw the masked person come from behind the buildings and turn north walking at a rapid pace. Davis pointed his gun at the man and said, ''Police officer; freeze.'' The appellant stopped and dropped his gun to the ground. Davis called to Lestelle and the latter came upon the scene and saw Davis and the appellant. The appellant had the handkerchief in place covering the lower part of his face as a mask. The officers found the defendant's loaded gun. They all then went to the next block west on Westview where the defendant had parked his automobile. The officers found therein a shoulder holster, a pair of fatigue trousers, a trenchcoat and a brassiere which was knotted in the back similiar to the knot on the handkerchief which covered the lower part of defendant's face. The keys were in the ignition switch of the appellant's car. Lestelle asked the defendant if this was the first ''job'' he had ''tried to pull'' and defendant stated that it was, that he had bought the gun in Louisiana and that he had left the keys

in the car because he "wanted to get out of here real fast." The defendant also told the officers that he had planned the "job" for about two weeks.

The defendant testified in effect that sometime after Lestelle had gotten out of the car he, the defendant, had changed his mind and decided not to commit the robbery.

In a signed statement the defendant stated that he had no money, that he "read in the paper about a guy pulling a stickup and I decided to try it by phoning the liquor store," and thereafter described substantially what has heretofore been set forth. In such statement he made no mention of any change of mind with reference to committing the robbery.

Appellant now contends that the judge misdirected the jury on a question of law in giving two allegedly inconsistent instructions and also in effect he contends that the evidence was insufficient to sustain the verdict.

If the Rules on Appeal are to be strictly construed the appellant cannot question the giving of the instructions complained of, for he did not, pursuant to rule 33 of the Rules on Appeal, make any request for any additional record and therefore the written instructions given or refused by the court are not before us.

In *People* v. *Letourneau*, 34 Cal.2d 478, 493 [211 P.2d 865] the court said: "... If a party is to make any point, whether of commission or omission, in relation to the giving of instructions, all the instructions requested should be filed and included in the record and, as stated in *Vaughn* v. *Jonas* (1948), 31 Cal.2d 586, 596 [191 P.2d 432], 'Each instruction should be identified by a number and should indicate by whom it was requested or that it was given by the court of its own motion; on each requested instruction the trial judge should endorse the fact as to whether it was given or refused or given as modified, with the modification, if any, clearly indicated.' The burden is on the appellant to affirmatively show error and prejudice therefrom; he has not, on this record, sustained such burden."

If the appellant had wanted the instructions to be before us he could have accomplished that by requesting such in conformity with the rules on appeal and had such been done this Court would then have all of the instructions before it and would be in a better position to dispose of the matter. The appellant is in no position to complain about the instructions under the circumstances.

In the motion for a new trial counsel for the appellant filed

a memorandum of points and authorities in support of the motion. In the memorandum, which is included in the Clerk's Transcript, it is set forth, among other things, that at the defendant's request the court instructed the jury as follows:

". . . 'If you find that the defendant, Earvin Robinson, freely and voluntarily abandoned the attempt to commit robbery before the act was put in process of final execution, without any outside cause prompting such abandonment, he is entitled to an acquittal.'"

It is further stated in the memorandum that such instruction is a correct statement of the law and *People* v. *Von Hecht* (1955), 133 Cal.App.2d 25 [283 P.2d 764]; *People* v. *Corkery* (1933), 134 Cal.App. 294 [25 P.2d 257]; Wharton's Criminal Law, section 226 (see 14 Cal.Jur.2d 221, § 34) are cited as authority. Further it is set forth in the memorandum that the court gave the instruction referred to as CALJIC Number 102 which reads as follows:

"When a person has once committed acts which constitute an attempt to commit a crime, he cannot avoid responsibility by not proceeding further with his intent to commit the crime . . . by reason of voluntarily abandoning his purpose. . . ."

In a document which is entitled "Memorandum of Points and Authorities in Support of Defendant's Motion for an Appeal" and filed in the superior court the defendant has obviously copied almost verbatim the memorandum submitted to the judge on the motion for a new trial. The document just referred to is before us as a part of the clerk's transcript.

Appellant states that the first instruction, namely the one submitted by his counsel to the judge is a correct instruction and that there was no error in the giving of same.

█ The second instruction, namely CALJIC Number 102 has been held to be a correct statement of the law. (*People* v. *Walker*, 33 Cal.2d 250, 258 [201 P.2d 6]; *People* v. *Johnson*, 131 Cal. 511, 514-515 [63 P. 842]; *People* v. *Stewart*, 97 Cal. 238, 240 [32 P. 8]; *People* v. *Von Hecht, supra*, 133 Cal.App.2d 25, 36; *People* v. *Carter*, 73 Cal.App. 495, 500 [238 P. 1059].)

█ The court stated in the Carter case: "There can be no doubt that mere intent by a single individual to commit a crime is not sufficient to amount to a criminal act. However, it is also unquestionable that after the intent has been formed and such intent has been coupled with an overt act toward the commission of the contemplated offense, the abandonment of the criminal purpose will not constitute a defense to a charge of attempting to commit a crime.

"In the case of *People* v. *Oates,* 142 Cal. 12 [75 P. 337], it is ruled that in a proper case the giving by the trial court of an instruction that 'a person who attempts to commit a crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable for said attempt,' was not error, as the instruction was substantially in the language of section 664 of the Penal Code.

"As is said in the case of *People* v. *Stewart,* 97 Cal. 238 [32 P. 8] : 'The fact that he (defendant) abandoned his wicked purpose upon the approach of other parties has not the slightest tendency to purge him of the legal consequences of his criminal conduct. If an assault with the intent here alleged is made, it is no less a crime, though the aggressor should abandon his intentions before the consummation of the act, by reason of the pains of a stricken conscience alone.' To the same effect see: *People* v. *Johnson,* 131 Cal. 511 [63 P. 842] ; *People* v. *Dong Pok Yip,* 164 Cal. 143 [127 P. 1031] ; *People* v. *Bowman,* 6 Cal.App. 749 [93 P. 198].)" (*People* v. *Carter, supra,* 73 Cal.App. 495 at p. 500.)

The Carter case rule in effect is that once an intent to commit a crime has been formed and overt acts toward the commission of that crime have been committed by a defendant he is then guilty of an attempt, whether he abandoned that attempt because of the approach of other persons or because of a change in his intentions due to a stricken conscience.

In the case before us the jury could have determined that but for the action of Officer Davis, appellant would have proceeded further with his purpose to rob Officer Lestelle. Even if the jury had determined that appellant abandoned the idea of robbery after Officer Lestelle was on the porch of the house at 3015 Westview and up to the time he was stopped by Officer Davis he had committed sufficient overt acts to constitute an attempt. (*People* v. *Gibson,* 94 Cal.App.2d 468, 470-471 [210 P.2d 747] ; *People* v. *Parrish,* 87 Cal.App.2d 853, 856 [197 P.2d 804] ; *People* v. *Moran,* 18 Cal.App. 209, 211 [122 P. 969].)

It was said in the Gibson case, *supra,* at page 470: ". . . Two elements only are essential to an attempted crime, namely, a specific intent and an ineffectual overt act directed at its consummation. (*People* v. *Fiegelman,* 33 Cal.App.2d 100, 104 [91 P.2d 156] ; *People* v. *Lombard,* 131 Cal.App. 525, 530 [21 P.2d 955].) It is not necessary that the overt act proved should have been the ultimate step toward the consummation of the design. It is sufficient if it was 'the first

or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.' (*People* v. *Fiegelman, supra,* 105.)''

In this case the appellant insists that the first instruction was proper. We entertain no doubt that the second instruction, namely CALJIC 102 was proper. ▮ If the defendant wanted any additional instructions or any clarification thereof he should have made a request therefor. By his failure to do so he waived the right to complain of any such omission for the first time on appeal. (*People* v. *Mandell,* 35 Cal.App. 2d 368, 373 [95 P.2d 704] ; *People* v. *White,* 116 Cal. 17, 19 [47 P. 771].)

▮ From appellant's brief it would seem that he is now asserting that the officers contradicted themselves in their testimony; that Officer Davis did not tell the truth and that the officers could not, under the circumstances, see how he was dressed.

It is not the function of this court, under the circumstances as here presented, to determine the weight of the evidence. The jury and the trial judge determined what facts were established by the evidence.

The guilt of the defendant was shown by clear and substantial evidence.

▮ Appellant contends that his signed statement should not have been introduced into evidence. Suffice it to say that a proper foundation was laid for the introduction of such statement and no objection was made thereto. *People* v. *Millum,* 42 Cal.2d 524, 526, 528 [267 P.2d 1039].

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.