[Crim. No. 4947.    Third Dist.    Apr. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DALE BUREN
WREN, Defendant and Appellant.

Stanley J. Gale, under appointment by the Court of Appeal, and Gale & Goldstein for Defendant an Appellant.

Thomas C. Lynch, Attorney General, Roger E. Venturi and Elliott D. McCarty, Deputy Attorneys General, for Plaintiff and Respondent.

REGAN, J.—Defendant was found guilty by a jury of a violation of section 23101 of the Vehicle Code (felony drunk driving) and of a violation of section 23123 of the Vehicle Code (keeping open container with alcoholic beverage in vehicle on a highway). He appeals from the judgment of conviction.

Defendant, while driving his Mercury automobile upon a public highway, veered across the center line and collided with a Falcon automobile driven by Lieutenant Colonel James Willett causing injuries to be suffered by Colonel Willett and his wife, who was a passenger in the Willett automobile. The evidence at the trial established that defendant was intoxicated; his speech was incoherent and unintelligible, and a blood sample taken from defendant showed a .23 percent alcohol content. A partially filled bottle containing bourbon whiskey was lying on the right front floor board of defendant's auto with the bottle cap off. Defendant admitted two prior felony convictions.

Defendant contends the punishment and sentence imposed violates section 654 of the Penal Code, which section provides in pertinent part as follows: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

Defendant contends that he is being improperly punished

for two offenses (i.e., drunken driving with bodily injury *and* possession of an open bottle of liquor in a car) that arose from his driving a motor vehicle upon a public road. Defendant argues that he was charged with multiple offenses arising from a single ''act.'' The act consisted of driving a motor vehicle upon a public road, and all of the offenses of which he was charged stemmed from and were caused by the single act.[1]

In *In·re Hayes,* filed March 17, 1969, 70 Cal.2d 604 [75 Cal.Rptr. 790, 451 P.2d 430], the Supreme Court found that the imposition of sentences for violations of Vehicle Code section 14601 (driving a motor vehicle with knowledge of a suspended license) and Vehicle Code section 23102 (driving while under the influence of intoxicating liquor), arising from a single act of driving, did not violate the proscription against multiple punishment contained in section 654. The court notes (at p. 607): ''We cannot overlook the crucial element: section 654 refers not to *any* physical act or omission which might perchance be common to all of a defendant's violations, but to a defendant's *criminal* acts or omissions. (See, e.g., *In re Johnson* (1966) 65 Cal.2d 393, 395 [54 Cal. Rptr. 873, 420 P.2d 393]; *People* v. *Quinn* (1964) 61 Cal.2d 551, 555 [39 Cal.Rptr. 393, 393 P.2d 705]; *People* v. *Brown* (1958) *supra,* 49 Cal.2d 577, 590 [320 P.2d 5]; *People* v. *Branch, supra,* 119 Cal.App.2d at p. 496 [260 P.2d 27].) Indeed, section 654 itself makes this distinction evident, since it refers to any act or omission 'made punishable' by different statutes. The netural act of driving, like the mere act of possessing in the foregoing cases, when viewed in a vacuum, is not 'made punishable' by any statute.

''The proper approach, therefore, is to isolate the various *criminal* acts involved, and then to examine only those acts for identity. In the instant case the two criminal acts are (1) driving with a suspended license and (2) driving while intoxicated; they are in no sense identical or equivalent. Petitioner is not being punished twice—because he cannot be punished at all—for the 'act of driving.' He is being penalized once for his act of driving with an invalid license and one for his independent act of driving while intoxicated.''

The court concluded with the following (at p. 611):

''In summation, then, section 654 of the Penal Code pro-

---

[1]Defendant cites in support of his claim of error the holding in *In re Hayes* (1968) (Cal.) 69 Cal.Rptr. 310, 442 P.2d 366, wherein the court construed section 654, Penal Code. However, a rehearing was granted and the court, on March 17, 1969, issued a new and changed opinion.

scribes multiple punishment for a single 'act or omission which is made punishable' by different statutes, i.e., a single *criminal* act or omission. Since the mere act of driving is made punishable by no statute, it is not the type of act or omission referred to in section 654. The acts 'made punishable' which this petitioner committed were (1) driving with a suspended license and (2) driving while intoxicated, two separate and distinct criminal acts; that they were committed simultaneously and that they share in common the neutral noncriminal act of driving does not render petitioner's punishment for both crimes in conflict with Penal Code section 654.''

In the case before us the acts made punishable which defendant committed, i.e., felony drunk driving and driving with an open container of alcoholic beverage, are two separate and distinct criminal acts. Defendant's punishment for both crimes does not conflict with Penal Code section 654.

■ Defendant next contends that the nonconsensual withdrawal of a blood sample from his person deprived him of certain statutory rights, and also of his constitutional rights and, accordingly, the results of the blood-alcohol test should not have been received in evidence. The blood sample was taken from defendant by Dr. Carl Romans at the Placer County Hospital. Dr. Romans stated that defendant was fully conscious and in possession of his mental faculties at the time of the blood-alcohol test and that defendant did not object to the removal of the blood sample from his arm. Defendant testified the taking of the blood sample was over his objection. He argues that when he objected, section 13353 of the Vehicle Code creating a statutory penalty for refusal to submit to the blood sample came into play and he agreed to accept this penalty (suspension of his driver's license) and thus he could not be subjected to the blood test. Consequently, its admission into evidence was error.

Assuming that defendant did object as he so testified, no force or violence was used. The doctor, on *voir dire,* stated that defendant did not object to the test, which was administered in a medically acceptable manner. Thus, an attempt to interject a Rochin-type situation must fail. (See *Schmerber* v. *State of California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826]; *Breithaupt* v. *Abram* (1957) 352 U.S. 432 [1 L.Ed.2d 448, 77 S.Ct. 408]; *People* v. *Sudduth* (1966) 65 Cal.2d 543 [55 Cal.Rptr. 393, 421 P.2d 401].)

This court considered an almost identical situation in *Peo-*

ple v. *Fite* (1968) 267 Cal.App.2d 685 [73 Cal.Rptr. 666]. In *Fite* the defendant contended that the legislative intent behind section 13353 precluded the taking and introduction of a chemical test taken over an arrestee's objections. The court rejected this argument and held (at p. 690) that: "section 13353 complements rather than supersedes section 23101, and that the enactment of the implied consent law in no way affected the admissibility of blood alcohol tests under established case law." (See also, *People* v. *Hanggi* (1968) 265 Cal.App.2d Supp. 969 [70 Cal.Rptr. 540].) And on page 691 this court states: "Nowhere do we find any legislative indication that by the enactment of the implied consent law, the Legislature thereby intended to preclude the taking of blood samples as an incident to a lawful arrest over a person's refusal in the absence of force or violence."

Finally defendant contends the trial court's instructions were erroneous. In order to prove felony drunk driving in violation of section 23101, the state has the burden of establishing beyond a reasonable doubt the following elements:

(1) That the defendant drove a vehicle on a public highway;

(2) That he was under the influence of intoxicating liquor;

(3) That he did some act forbidden by law or neglected a duty imposed by law in driving the vehicle; and

(4) That such act or neglect proximately caused bodily injury to a person other than himself.

As to element (3), the People here relied upon section 21650 of the Vehicle Code, which, in general, provides that on all highways a vehicle shall be driven upon the right half of the roadway. Defendant contends that prejudicial error was committed by giving an ambiguous instruction on the doctrine of "imminent peril" as it relates to the third element. The basis of defendant's argument is that the failure to properly instruct on the doctrine constituted a failure to instruct on an essential element of his defense. (See *People* v. *Clark* (1962) 202 Cal.App.2d 513 [20 Cal.Rptr. 803]; see also, *Jolley* v. *Clemens* (1938) 28 Cal.App.2d 55, 67-68 [82 P.2d 51].) Defendant is relying upon his own testimony that Mrs. Willett was driving, that she backed the car out across the road, and that the car then pulled into the road, traveling in the opposite direction from defendant. In order to avoid the accident the defendant cut the wheel to the left and hit the brakes.

In *Clark, supra,* the court notes (at p. 517) that a defendant is entitled to instructions on his theory of the case as

disclosed by the evidence, no matter how weak or incredible such evidence may be.

Here, however, the record discloses no attempt by counsel to have the jury instructed on "imminent peril." ▆ It is the duty of the trial court to instruct on the general principles of law which are necessary for the jury's understanding of the case, whether such instructions are requested or not. In the absence of a request, however, he need not instruct on specific points or special theories that may fit the facts of the case. (*People* v. *Sutton* (1964) 231 Cal.App.2d 511, 515-516 [41 Cal.Rptr. 912]; *People* v. *Bowens* (1964) 229 Cal. App.2d 590, 594-595 [40 Cal.Rptr. 435]; *People* v. *Jones* (1964) 225 Cal.App.2d 434, 437-438 [37 Cal.Rptr. 406].) ▆ By his failure to request additional instructions or any clarification thereof, he waived his right to complain of any such omission on appeal. (*People* v. *Partin* (1967) 254 Cal. App.2d 89, 98 [62 Cal.Rptr. 59]; *People* v. *Robinson* (1960) 180 Cal.App.2d 745, 752 [4 Cal.Rptr. 679].)

Furthermore, the instruction given by the court adequately covers defendant's theory of the accident. The jury did not believe defendant's testimony and properly so in view of defendant's condition, the physical evidence left by the Willetts' car, and the fact that defendant was impeached by his admission of two prior felonies. Thus, even assuming that a specific instruction should have been given on imminent peril, the evidence of guilt is overwhelming, and therefore such an alleged error would not have been prejudicial to defendant. (See *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

The judgment is affirmed.

Bray, J.,* concurred.

PIERCE, P. J.—I dissent. An examination of the record convinces me there was a single continuous chain of circumstances and that Wren had a single intent and objective—to get drunk and drive a car in that condition.

On the afternoon of December 31, 1967, Wren was at the Auburn home of his wife's brother. The men watched two football games on T.V. Between games they loaded the brother-in-law's pickup with furniture which was to be taken to the home of his father-in-law near Lincoln, where Wren and his wife were staying. Wren and his brother-in-law each had one

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

mixed drink during the second game. After the game Wren, accompanied by his wife, drove the pickup to the father-in-law's home. On the way they stopped and bought a fifth of whisky. This bottle was opened when they reached that home. Wren and his brother-in-law, who had arrived in his own car, unloaded the furniture and each had one more mixed drink. They then drove into Lincoln in Wren's car, stopping for gas and oil and then at a grocery store where defendant bought the fifth of whisky subsequently found in his vehicle. They returned to the father-in-law's house, stopping en route at a service station where Wren, his brother-in-law, the station's owner, and a mutual friend each had a drink from the previously unopened bottle. The bottle was placed in the glove compartment on the ride back to the house where it was used for another round of mixed drinks. Wren and the brother-in-law then left in Wren's car, taking the bottle with them. Before driving off Wren stood beside the vehicle drinking from the bottle. There is a conflict in Wren's testimony as to how much was consumed. He stated and repeated that he "killed" the bottle and that he drank until the bottle was "empty." But on the same page of the transcript he testified (by indicating with his fingers) that 3 inches of liquor remained. The bottle with its top off was then placed on the floor of the car and the two men drove off. (When the officer discovered it at the time of the arrest, it was found there with an unspecified quantity of liquor remaining.) Wren admitted he had become intoxicated. Other evidence indicates he was very intoxicated. The brother-in-law was not before the court. The accident happened shortly after leaving the house.

It is not unlawful to get intoxicated. But it becomes so the instant one gets into and operates a moving motor vehicle and intoxication is the first and vitally important element of the crime of felony drunk driving.

I do not think that *In re Hayes* (1969) 70 Cal.2d 604 [75 Cal.Rptr. 790, 451 P.2d 430], is applicable to this case. At the outset (on p. 605) the opinion states: "Section 654 provides that 'An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one. . . .' The interdiction is not limited to the provisions of the Penal Code but embraces penal provisions in other codes as well, including those found in the Vehicle Code. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 18 fn. 1 [9 Cal.Rptr. 607, 357 P.2d 839]. . . .

"The key to application of section 654 is the phrase 'act or omission': a defendant may be punished only once for each distinct 'act or omission' committed. There have been numerous attempts in the cases to define a single 'act' with varying degrees of clarity. Section 654 has been held to apply, for example, where the multiple violations are 'necessarily included offenses' [citation] and where there is a single 'intent and objective' underlying a course of criminal conduct (*Neal* v. *State of California* (1960) *supra*, 55 Cal.2d 11) but not where there are multiple victims. (*id.*). Most of the cases construing section 654 can be resolved by application of one or the other of these theories. [Citations.] . . ."

Footnote 1 (on p. 606 of 70 Cal.2d) of the *Hayes* decision says: "Our analysis herein is in no way intended to preclude application of the above tests where appropriate, any more than those tests themselves are mutually exclusive. *It is only because we find all of the foregoing formulae inapplicable that we resort to the present approach. If under any of the enunciated tests the proscription of section 654 applies, a contrary result under another test is irrelevant.*" (Italics ours.)

There is no similarity whatever between the facts here and the *Hayes* facts. Here, although defendant had had three mixed drinks earlier, the fifth of whisky later found in the car and which had been bought for the purpose was the source of Wren's intoxication. That intoxication plus the driving caused the ultimate result—a felonious accident. In *Hayes* the suspended license had had nothing whatever to do with the drunken driving.

I can see no reason why the "single intent and objective" test of *Neal* v. *State of California*, 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], cannot properly be applied here. Of course, the getting intoxicated before and during the drive and the operation of the vehicle were not a single physical act. "Few if any crimes, however, are the result of a single physical act. 'Section 654 has been applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.' (*People* v. *Brown, supra* [49 Cal.2d 577 (320 P.2d 5)] 591)." (*Neal* v. *State of California, supra*, 19.) *Neal* seems to spell out the test rather clearly. Divisibility depends upon the intent and objective of the actor. "If all of the offenses were incident to one objective,

the defendant may be punished for any one of such offenses
but not more than one." (*Id.*, p. 19.) Illustrative cases are
cited: *People* v. *Logan* (1953) 41 Cal.2d 279, 290 [260 P.2d
20] (where defendant committed a robbery after first knock-
ing out the victim with a baseball bat); *People* v. *Greer*
(1947) 30 Cal.2d 589, 600 [184 P.2d 512] (rape and lewd and
lascivious conduct arising out of one act of sexual inter-
course). The *Neal* opinion illustrates the distinction by citing
*People* v. *Slobodion* (1948) 31 Cal.2d 555, 561-563 [191 P.2d
1] (a sexual perversion accomplished as an act separate and
distinct from and not incidental to lewd and lascivious con-
duct). The facts of *Neal, supra,* are also apt. There arson by
applying and lighting gasoline was the means selected to
murder two occupants of a home. Cases and instances could be
multiplied. In *People* v. *Manago* (1964) 230 Cal.App.2d 645
[41 Cal.Rptr. 260], defendant had possession of a razor as a
weapon to use in the event of apprehension while he com-
mitted a burglary. This is to be contrasted (although I find
difficulty in accepting the sufficiency of the severability) in
*People* v. *Hudgins* (1965) 236 Cal.App.2d 578 [46 Cal.Rptr.
199] (hear. den.) where defendant went berserk armed with
a pistol and shot a man he believed was having an affair with
his wife. There the court upheld both second degree murder
and violation of the dangerous weapons control law. It said on
page 587 that it would have upheld a double punishment con-
tention "if the two offenses were committed by one act or in a
series of acts having but a single purpose, but such was not
the case." It found the toting of the gun and the act of using
it severable. (The facts stated in the opinion in *People* v.
*Hudgins, supra,* do not make clear how long defendant had
been carrying the gun or the circumstances under which it
was being carried.)[1]

Returning to our case, it is, of course, true that if Wren
had been carrying an open bottle of liquor around in his car
for some time, he could have been punished for the Vehicle
Code section 23123 violation, and also, if he used it later as a

[1]It must be admitted that some courts have been more easily satisfied
than others as to when severability or divisibility of purpose exists. Since
the purpose and end of the statute (§ 654) is effectually to soften a
criminal penalty, I would shun a too narrow finding of facts to break the
"indivisible transaction" chain. (See Pen. Code, § 4; *Walsh* v. *Depart-
ment of Alcoholic Beverage Control* (1963) 59 Cal.2d 757, 764-765 [31
Cal.Rptr. 297, 382 P.2d 337]; *People* v. *Fair* (1967) 254 Cal.App.2d 890,
892-893 [62 Cal.Rptr. 632]; *People* v. *Wilkinson* (1967) 248 Cal.App.2d
Supp. 906, 909 [56 Cal.Rptr. 261].)

means of getting drunk, for drunken driving. The two acts would have been divisible.

It is, I suppose, arguable that when Wren and his brother-in-law took the already opened whisky bottle out of the car and into the father-in-law's home where a round of drinks were served therefrom that that completed one criminal violation of Vehicle Code section 23123 and that commencement of the subsequent journey was a new adventure. To me that would be a strained interpretation. (See fn. 1.) Also, under the prosecution's case, it was not the act for which Wren was tried.

The rationalization of the ''course of conduct with a single intent and objective'' rule interpreting section 654 is obvious. It is to prevent overly zealous prosecutors from "loading" counts into an accusatory pleading when the common sense of a given situation shows (in capital letters) that defendant had but one criminal act in mind—an act which it is possible to pinpoint (and, of course, one where there was but one victim). I am confident the court in *Hayes* did not intend to state a rule that in *every* case where a noncriminal act (e.g., the driving of an automobile) coincides with the simultaneous accomplishment of two separately punishable criminal acts *and the commission of one such act is the means of effecting the other,* and where the single intent and objective test can therefore be applied—as it has been applied since *Neal* in many opinions—such test must be rejected and double punishment permitted. What the court did hold was that when two simultaneous *but unrelated* criminal acts have in common a noncriminal act (and purpose), they may be separately punished. If it meant any greater change of established law, then it has indeed wreaked havoc to give enthusiastic prosecutors unbridled powers to pad accusatory pleadings as constituent-conscious Legislatures continue to add new special penal statutes to describe already *pro*scribed conduct. My confidence in the limitations of *Hayes* remains unshaken notwithstanding my two learned brothers disagree with me.

Appellant's petition for a hearing by the Supreme Court was denied June 11, 1969. Traynor, C. J., and Peters, J., were of the opinion that the petition should be granted.