[Civ. No. 11934. Third.Dist. Oct. 28, 1969.]

WILLIAM E. PLUMB, Plaintiff and Appellant, v. DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Respondents.

**COUNSEL**

Vance J. Vantassell and Laurence C. Blunt for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and G. A. Strader, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**PIERCE, P. J.**—Petitioner Plumb appeals from a judgment denying his petition for a writ of mandate compelling the respondent Department of Motor Vehicles to set aside its decision suspending his driver's license for six months under Vehicle Code section 13353.[1]

Plumb's contention is that the arresting officer, who had given Plumb an augmented "*Miranda* warning" (*Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) which emphatically stated that Plumb "had an absolute right to counsel . . . present at all stages of the proceedings against him . . ." must have realized that Plumb, when he asked permission to make a phone call, had misinterpreted the officer's statement just quoted and was seeking to exercise the proffered right, thus nullifying his subsequent refusal to submit to one of the three tests provided for in the code section. We have concluded that the matter must be reheard to permit the department to determine whether the officer's statement was, in fact, so misinterpreted.

On the evening of April 18, 1967, Highway Patrol Officer George saw Plumb driving erratically. He caused him to stop and alight from his vehicle. When Plumb performed a roadside sobriety test poorly and showed other indications of intoxication the officer arrested him and gave him a warning more extensive than that required by *Miranda,* stating Plumb's "absolute right to counsel and that he could have counsel present at all stages of the proceedings against him. . . ." Plumb said he would "stay quiet." Plumb also testified that after he had been warned (as we have quoted the warning above) he asked if he "could make a telephone call." The officer told him that he might do so "after [he] had been booked." On cross-examination, the officer would neither affirm nor deny that request and reply. He did not recall. He stated, however, that if such a request had been made "I would advise him that he would be allowed two telephone calls after booking." Plumb testified: "My primary reason for asking when

---

[1] Vehicle Code section 13353 provides that any person who drives a motor vehicle on a highway shall be deemed to have given implied consent to a blood, breath or urine test when lawfully arrested for allegedly driving under the influence of intoxicating liquor. The section states: "Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months." This section then provides for such suspension in the event of such refusal and prescribes the procedures to be followed by the Department of Motor Vehicles, including a hearing to be held, if demanded.

I could make a phone call when I was in the highway patrol car, was to call an attorney and I even had the attorney in mind." Plumb did not testify that he had told Officer George his purpose in wanting to make a phone call.

At the hospital Officer George, according to his testimony, "read [to Plumb] the required statement under the Implied Consent Law *verbatim*." (Italics ours.) According to Plumb, "[h]e did not go through the entire content of the Implied Consent law as such. In fact, it was you might say, *hit and miss*." (Italics ours.) Plumb's reply was "No, you've got my license. I refuse." Separately he was asked to submit either to a blood test, a breath test, or a urine test. He refused each request. He refused similar requests made by the doctor. He stated his reason for refusal: "And, quite frankly, I didn't know what to say—I mean *I wasn't aware of all the ramifications of this particular law*."[2] (Italics ours.)

■ "It is now settled that in a civil proceeding for suspension of a person's driving privilege under the California Implied Consent Law, a driver does not enjoy the right to consult with counsel, or to have counsel present, before deciding to submit to the chemical tests prescribed by the statute inasmuch as such tests do not violate one's right against self-incrimination (*Schmerber* v. *California,* 384 U.S. 757, 760-765 [16 L.Ed.2d 908, 913-916, 86 S.Ct. 1826]; *People* v. *Sudduth,* 65 Cal.2d 543, 546-547 [55 Cal.Rptr. 393, 421 P.2d 401]; *United States* v. *Wade,* 388 U.S. 218, 221 [18 L.Ed.2d 1149, 1153, 87 S.Ct. 1926]), nor one's right to be free from illegal searches and seizures (*Schmerber* v. *California, supra,* pp. 766-772 [16 L.Ed.2d pp. 917-920]), nor one's right to counsel. (Citation.)" (*Westmoreland* v. *Chapman* (1969) 268 Cal.App.2d 1, 4-5 [74 Cal.Rptr. 363] (hear, den.); see also *Reirdon* v. *Director of Dept. of Motor Vehicles* (1968) 266 Cal.App.2d 808, 810-811 [72 Cal.Rptr. 614]; *Ent* v. *Department of Motor Vehicles* (1968) 265 Cal.App.2d 936, 938-943 [71 Cal.Rptr. 726]; *Fallis* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 373, 383 [70 Cal.Rptr. 595]; *Finley* v. *Orr* (1968) 262 Cal.App.2d 656, 663-665 [69 Cal.Rptr. 137] (hear. den.).)

■ The rule is equally well settled, based upon the pilot opinion of the appellate court for the Fourth District in *Rust* v. *Department of Motor Vehicles* (1968) 267 Cal.App.2d 545, 547 [73 Cal.Rptr. 366] hear.

---

[2]Plumb also testified:

"Mr. Baker [Plumb's attorney]: You refused to take the test because you did not have sufficient knowledge of the ramifications of the test and you desired legal counsel before making a determination and you had, in effect, been advised you couldn't have legal counsel until after they revoked your license—until after you had made a determination of whether to take a test or not?

"Mr. Plumb: That is right."

den.) that when the driver asks to talk to his attorney before deciding whether or not to submit to one of the section 13353 tests and the request comes after he has been told by the officer (as a part of a *Miranda* warning) that he has a right to consult an attorney, he cannot be deemed actually to have refused to submit to a test—IF he, as a matter of fact, honestly misconstrued the officer's statement as the right to make such a call before reaching a decision. The court in *Rust* likened the case to *People* v. *Ellis* (1966) 65 Cal.2d 529 [55 Cal.Rptr. 385, 421 P.2d 393], where officers had first advised defendant of his right to remain silent and thereafter, when he refused to speak for a voice identification, had failed to explain to him that such type of "silence" was not encompassed within the Fifth Amendment guarantee against enforced testimonial communication and thereafter offered his refusal in evidence. That circumstance was a basis for the Supreme Court reversal. (*Id.* p. 539.)

*Rust* has been followed in *Kingston* v. *Department of Motor Vehicles* (1969) 271 Cal.App.2d 549, 553-554 [76 Cal.Rptr. 614]; *Wethern* v. *Orr* (1969) 271 Cal.App.2d 813, 814-817 [76 Cal.Rptr. 807] (hear. den.); *Farrington* v. *Department of Motor Vehicles* (1969) 272 Cal.App.2d 330, 334-335 [77 Cal.Rptr. 388] (hear. den.); *Weber* v. *Orr* (1969) 274 Cal.App.2d 288, 291-292 [79 Cal.Rptr 297] (hear. den.); *West* v. *Department of Motor Vehicles* (1969) 275 Cal.App.2d 908 [80 Cal.Rptr. 385]. It has been distinguished in *Walker* v. *Department of Motor Vehicles* (1969) 274 Cal.App.2d 793, 796-800 [79 Cal.Rptr. 433], and *Pepin* v. *Department of Motor Vehicles* (1969) 275 Cal. App.2d 9, 10-11 [79 Cal.Rptr. 657].[3] In the latter case it was stated simply that substantial evidence supported the court's implied finding that Pepin was not misled. That, too, was the basis for distinguishing *Rust* in the *Walker* case, *supra,* but with more explication. The court first pointed out that, as we have seen, the right to consult an attorney before deciding whether to refuse to submit to a test is not a constitutional right. It then states: "[T]he probative value of a chemical test for intoxication diminishes with the passage of time, so that a delay for the time necessary to locate a lawyer could operate to prevent any

---

[3]We also cite a most recent case—*Lagomarsino* v. *Department of Motor Vehicles* (1969) 276 Cal.App.2d 517 [81 Cal.Rptr. 193].

meaningful testing." (*Id.* p 797.) Under the facts in *Walker* the driver had first consented to and then refused to submit to a breath test. He had been permitted to make a phone call. The opinion stresses that the question under discussion was a matter of fact and not of law; that the trial court had made a finding that Walker had not been misled and that finding was detailed and explicit. *Walker* held that substantial evidence supported the trial court's finding. (*Id.* pp. 798-799.)

■ The same conclusion cannot be reached in the case at bench. Neither the department not the trial court made any finding on the question whether Plumb had been confused or misled. As noted above, the officer had overstated the *Miranda* warning which does not require that an accused be informed that he has an "absolute" right to have an attorney "present" at all times. Unlike the facts in the *Walker* case, Plumb was not allowed to make a telephone call, at least (apparently) until after he was compelled to make a decision as to whether he would submit to a test. The hearing began on June 8, 1967. The trial court proceedings were heard October 20, 1967. The judgment was entered January 24, 1968. *Rust* v. *Department of Motor Vehicles, supra,* 267 Cal.App.2d 545, was decided in November 1968. As stated in *Farrington* v. *Department of Motor Vehicles, supra,* 272 Cal.App.2d 330, at page 335: "At the time the petition for the writ was heard, none of the parties to the proceeding or the court had the benefit of . . ." the decision in *Rust.* The testimony we have quoted above on the question now before us is both equivocal and incomplete. In fairness and under the authorities cited we hold that Plumb is entitled to be heard fully on the question of whether he was in fact misled and confused.

■ An intermediate court probably need not speak in defense of a rule predicated upon a similar Supreme Court decision (*People* v. *Ellis, supra,* 65 Cal.2d 529) and one which has been reasserted by at least four subsequent appellate court decisions with hearings denied by the Supreme Court. We, nevertheless, think that the rationale of *Rust* should be explored a bit further. The rule only requires that the officer erase possible confusion caused the allegedly drunken laymen by the officer's own statements. Whether that rule should be extended (as a matter of statutory construction of the sentence in section 13353 we have quoted in footnote 1 above) to require a reasonable effort by the officer to make the consequences of refusal clear is an interesting question not now before us and which we do not decide. But we do assert that the requirement that the possibly-about-to-be-accused driver be fairly warned is implicit in the statement "[s]uch

person shall be told" of the effect of his failure to comply with the law's demands.

This court has held in *People* v. *Fite* (1968) 267 Cal.App.2d 685 [73 Cal.Rptr. 666] and *People* v. *Wren* (1969) 271 Cal.App.2d 788 [76 Cal.Rptr. 673] that the withholding of consent by the allegedly drunken driver does not compel a substitution of a six months' suspension of his license under section 13353 for penal prosecution under Vehicle Code section 23102, and that a chemical test may be performed despite the driver's verbal refusal to submit to such test. Thus he may suffer prosecution for drunken driving with its attendant punishment in the event of conviction, in addition to the penalty prescribed by section 13353. In fairness then, as well as under the Implied Consent Law, it should be made as clear as the accused's condition will permit that he is NOT entitled to have an attorney present.

The truth of the statement in *Walker* that the value of the chemical tests rapidly diminishes with time cannot be disputed. Drivers arrested under section 23102 should not be encouraged in dilatory practices which would tend to nullify the purpose of the Implied Consent Law. To permit the driver to postpone the giving of any of the tests by summoning professional help or even seeking such advice would produce that result. The *Rust* rule does not involve any significant delay; it only furthers fairness.

The judgment is reversed with instructions to the trial court to remand the matter to the Department of Motor Vehicles to determine under the *Rust* rule whether Plumb was in fact misled and confused, as now contended, by the officer's warning. The order of this court staying execution of the administrative decision of the Department of Motor Vehicles, being no longer necessary, is vacated.

Friedman, J., and Janes, J., concurred.