Filed 7/22/16  P. v. Quiroz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068658 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN328954) |
| FERNANDO QUIROZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Sim von Kalinowski, Judge.  Affirmed.

Benjamin B. Kington, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Fernando Quiroz drove a vehicle under the influence of alcohol, colliding with a light pole and severely injuring two passengers.  A jury found Quiroz guilty of driving

under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a))[1] and driving with a blood alcohol concentration above .08 causing injury (§ 23153, subd. (b)), and found true allegations he proximately caused great bodily injury to multiple victims (§ 23558) and personally inflicted great bodily injury to two victims (Pen. Code, §§ 1192.7, subd. (c)(8); 12022.7, subd. (a)). Quiroz pleaded guilty to driving without a license (§ 12500).

Quiroz appeals the judgment, arguing (1) the court should have sua sponte instructed the jury on the imminent peril doctrine; (2) the prosecutor committed misconduct by arguing defense counsel was personally dishonest; (3) defense counsel was ineffective because he did not request the imminent peril instruction, did not object to the prosecutorial error, and did not object to hearsay testimony offered by a police officer; and (4) the cumulative effect of these errors requires reversal. We conclude the trial court was not required to provide the imminent peril instruction sua sponte, Quiroz waived his arguments regarding the imminent peril instruction and prosecutorial misconduct by not objecting at trial, his trial counsel was reasonably effective, and any cumulative error was not prejudicial. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2014, Quiroz had a number of mixed drinks at a bar in Oceanside. He left the bar around 9:00 p.m. with Myra Sanchez and Adrianna De La Cruz to pick up Juan Fuentes. After picking up Fuentes, Quiroz drove the vehicle on California State

_____

[1]     All further statutory references are to the Vehicle Code unless otherwise specified.

2

Route 76, a two- to four-lane highway with a center median about three feet high separating the opposing lanes of traffic. De La Cruz sat in the front passenger seat, Sanchez sat behind De La Cruz, and Fuentes sat behind Quiroz.

Mitchell Moore was driving approximately 100 to 200 yards behind Quiroz in the far left lane on Route 76 at about 10:00 p.m. There was one other car halfway between Moore's vehicle and Quiroz's vehicle and over one lane to the right, but Moore did not see any other vehicles near Quiroz's vehicle at the time. Quiroz swerved slightly to the left and then made a long overcorrection to the right, spinning the vehicle around and ultimately slamming the driver's side of the vehicle against a light pole. The vehicle did not make contact with, or even come close to, the other vehicle on the road between Moore and Quiroz prior to or during the accident.

Sanchez had fallen asleep and only recalled waking up after the accident to screaming and yelling and Quiroz telling her, "I'm so sorry." Her tibia and fibula were broken, she had to have several surgeries, including a skin graft, to repair a severe laceration to her heel, and, as a result, she was confined to a wheelchair for six months. De La Cruz did not have any recollection of the accident either, and also suffered extensive injuries that included a broken clavicle, a broken arm, two broken femurs, a broken foot, and the amputation of her leg below the knee.

Following the accident, Quiroz stated he felt "buzzed" and his blood alcohol measured .143 percent on a preliminary alcohol screening test performed by Police Officer Gabriel Cobian at the scene. Cobian also conducted a field sobriety test on Quiroz and determined he was under the influence of alcohol and unable to safely operate

3

a motor vehicle. Testing of blood drawn from Quiroz at the hospital about two and one-half hours after the accident measured a blood-alcohol content of .14, indicating his blood-alcohol content was approximately .18 at the time of the accident.

Police officer Eric Anderson also responded to the scene and, at trial, testified he determined—based on statements from witnesses, the driver and the occupants of Quiroz's car, as well as evidence from the road including tire marks—Quiroz caused the collision by allowing his vehicle to leave the main portion of the highway and strike the pole while he was under the influence of alcohol. Anderson believed Quiroz violated sections 22107 and 21658, subdivision (a), and was traveling at an unsafe speed due to his level of intoxication. Finally, when asked about witness Moore's statement during cross-examination, Anderson testified as follows:

> "Q: And Mr. Moore never—Mr. Moore, the witness, never used the word 'drifted'; right?
>
> "A: I spoke with the witness after the crash, about a week after the accident, and he did say that he saw the vehicle drift to the right.
>
> "Q: I'm talking about Mr. Moore.
>
> "A: If that's the same person.
>
> "Q: You memorialized his statement; right? You took down his statement?
>
> "A: I spoke with two witnesses, so I don't know if Mr. Moore would be witness 1 or witness 2.
>
> "Q: Witness 1.
>
> "A: Witness 2 was the person who mentioned drifting off.
>
> "Q: You're not talking about witness 1, Mr. Moore?

4

"A: That's correct, he didn't mention that."

Quiroz's counsel did not object to this line of questioning.

Fuentes testified he recalled looking up from his phone, seeing lights and saying "watch out" just before the accident occurred. He assumed the lights were from a car but did not actually see a vehicle coming toward them. He did not remember what direction the lights were coming from or how close the lights were.

During closing arguments, the prosecutor discussed Fuentes's testimony, stating his talk of lights coming from another direction was a "red herring." The prosecutor told the jury not to get distracted, that other testimony indicated no other vehicle collided with the vehicle Quiroz was driving, and to focus on what was required under the law. The prosecutor also pointed out there was no instruction telling the jury swerving to avoid debris was not a violation of the code and that, more importantly, the evidence did not indicate Quiroz was swerving to avoid something. Quiroz's counsel did not object to the prosecutor's arguments.

The court instructed the jury regarding section 23153, subdivision (a), driving under the influence causing injury, and section 23153, subdivision (b), driving with 0.08 blood alcohol causing injury. In both instances, the instructions stated the People alleged Quiroz failed to perform the legal duty of exercising ordinary care at all times and maintaining proper control of his vehicle, and also committed the following illegal acts: a violation of section 22107, unsafe turning movement; a violation of section 22350, unsafe speed, and a violation of section 21658, unsafe lane change. Quiroz's counsel did

not ask for an instruction regarding the imminent peril doctrine and the court did not give one.

DISCUSSION

I

*Alleged Instructional Error—Imminent Peril or Mistake of Fact*

Quiroz argues the court erred by not instructing the jury sua sponte on the imminent peril doctrine or, in the alternative, on the mistake of fact defense. The imminent peril doctrine is a recognized defense to the charge of driving under the influence and causing injury. (*People v. Boulware* (1940) 41 Cal.App.2d 268, 269-270 (*Boulware*).) Under the doctrine, " '[a] person who, without negligence on his part, is suddenly confronted with unexpected and imminent danger, either to himself or to others, is not expected, nor required, to use the same judgment and prudence that is required of him in the exercise of ordinary care, in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise if confronted with the same unexpected danger, under the same circumstances.' " (*Id*. at p. 269, italics omitted.) A court is required to give the imminent peril instruction when it is requested and supported by the evidence. (*Id*. at pp. 269-270; *People v. Tucker* (1948) 88 Cal.App.2d 333, 338, 342 [no error in refusing to give imminent peril instruction where request not supported by evidence].) We review assertions the court should have given a particular jury instruction de novo. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Quiroz did not request an imminent peril instruction at trial and therefore waived this argument on appeal. (See *People v. Wren* (1969) 271 Cal.App.2d 788, 793

6

[defendant waives his or her right to an instruction on imminent peril by not requesting the instruction at trial]; see also *People v. Breverman* (1998) 19 Cal.4th 142, 158-159 [court is not required to ferret out all defenses that might possibly be shown by the evidence].) Quiroz argues he did not waive the argument because the court had an obligation to give the instruction sua sponte, reasoning that since the defendant in *Boulware* requested the instruction, the court's statement that it is necessary only at the defendant's request is dicta and no other authority addresses the issue. (See *Boulware, supra*, 41 Cal.App.2d at p. 270.) We disagree. In *Wren*, which postdates *Boulware*, the court concluded the defendant waived the same argument by not requesting the instruction in the trial court. (See *Wren,* at p. 793.) Although the court in *Wren* does not specifically address whether the trial court had an obligation to provide the instruction sua sponte, the defendant could not have waived the argument by failing to request the instruction if the court had an obligation to provide it sua sponte. Further, the general principle that the court is not required to determine—and thus sua sponte instruct on—all possible defenses, particularly where, as here, the defenses are not supported by substantial evidence, also supports our conclusion Quiroz waived this argument by not requesting the instruction at trial. (See *Breverman,* at pp. 1580-159.)

Even were we to overlook the waiver or conclude the trial court had an obligation to provide the instruction sua sponte, we would conclude there was no error because substantial evidence did not support the instruction. Quiroz contends Fuentes's testimony is substantial evidence supporting an imminent peril instruction, but Fuentes testified only that he saw some unidentified lights when he looked up from his phone immediately

7

before the collision. He was not certain the lights belonged to a vehicle and could not remember what direction they came from or what color they were. No other witnesses saw lights or another vehicle coming towards Quiroz's vehicle and there was no evidence indicating Quiroz's vehicle collided with, or nearly collided with, another vehicle before hitting the pole. To the contrary, Moore testified Quiroz swerved to the left and then severely overcorrected to the right, spinning the car around and ultimately crashing against the pole. There was no dispute Quiroz was under the influence of alcohol at the time of the accident and Anderson testified he concluded the accident was a result of Quiroz driving while intoxicated. The court did not err by not providing the imminent peril instruction because the evidence presented at trial was not sufficient to support providing the instruction. (See *Boulware, supra,* 41 Cal.App.2d at pp. 269-270; *People v. Tucker, supra,* 88 Cal.App.2d at p. 342.)

In the alternative, Quiroz argues the court should have instructed the jury on mistake of fact based on Fuentes's testimony that he yelled "watch out" after looking up and seeing lights. However, Quiroz did not present any testimony or evidence indicating he mistakenly perceived an imminent peril based on Fuentes yelling "watch out" or that he acted in accordance with that belief when he swerved the vehicle and caused the collision with the light pole. Further, Quiroz's counsel also did not request a mistake of fact instruction and the court had no obligation to provide that instruction sua sponte. (See *People v. Anderson* (2011) 51 Cal.4th 989, 996-997.) We conclude the court did not err by not instructing the jury on the imminent peril doctrine or, in the alternative, the mistake of fact defense.

8

## II

### *The Prosecutor Did Not Commit Misconduct*

Quiroz argues the prosecutor committed misconduct by disparaging defense counsel, pointing to the prosecutor's assertion that Fuentes's testimony regarding the lights was a "red herring" meant to distract the jury.

A prosecutor commits misconduct by using deceptive or reprehensible methods to persuade the jury. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1238, abrogated on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) A prosecutor need not act in bad faith to commit misconduct, but the defendant must have been prejudiced as a result. (*People v. Bolton* (1979) 23 Cal.3d 208, 213-214.) The conduct is prejudicial under the federal constitution when it infects the trial with such unfairness to deny the defendant due process and is prejudicial under state law when it results in a fundamentally unfair trial. (*Hajek and Vo,* at pp. 1238-1239.) Either standard of prejudice requires reversal. (*Ibid.*)

Here, however, Quiroz did not object to the prosecutor's statement or ask for a curative instruction during trial and therefore waived on appeal any assertion of prosecutorial misconduct. (See *People v. Hajek and Vo, supra*, 58 Cal.4th at p. 1238; *People v. Pearson* (2013) 56 Cal.4th 393, 426 [defendant waived his right to assert prosecutorial misconduct on appeal by not objecting to the offensive conduct and asking for a curative instruction at trial].) Quiroz argues an objection would have been ineffective because an admonition could not have cured the harm, but, for the same reasons we determine, *post*, the prosecutor's statements did not amount to misconduct, we

9

conclude the statements also were not so prejudicial an admonishment from the court would not have cured any potential harm.

Even were we to overlook the waiver, we would conclude there was no error because the prosecutor's statements did not amount to prosecutorial misconduct. Quiroz argues the prosecutor improperly suggested his defense attorney did not believe his innocence or put forward a defense he knew to be false, but did not question defense counsel's honesty or integrity. Instead, she stated Fuentes's testimony regarding lights was a "red herring" and the defendant could not lawfully swerve across a lane of traffic and collide with a pole to avoid a "phantom car." The prosecutor was entitled to argue her case vigorously during closing argument, to comment on the believability of the evidence, and to draw all reasonable inferences from it, and did nothing more here. (See *People v. Lee* (2011) 51 Cal.4th 620, 647; *People v. Meneley* (1972) 29 Cal.App.3d 41, 60 [prosecutor did not conduct misconduct by questioning consistency of testimony or possible bias of the witness]; *People v Edelbacher* (1989) 47 Cal.3d 983, 1030 [referring to testimony as "lies" is not misconduct so long as argument is based on evidence].) Quiroz also points to the prosecutor's concluding statement to the jury that the "phantom car is meant to distract you, but stay focused on . . . the elements." Although this single statement perhaps implies defense counsel intended to distract the jury, it does not suggest Quiroz's attorney did not believe his innocence or put forward a sham defense and, taken in context, was within the prosecutor's purview to vigorously argue the evidence during closing.

10

Quiroz relies on *People v. Seumanu* (2015) 61 Cal.4th 1293, 1337-1338, but that reliance is misplaced. In *Seumanu*, the California Supreme Court held the prosecutor committed misconduct by arguing defense counsel put forward a sham defense, as opposed to arguing the defense itself was a sham because it was unsupported by the facts, thereby implying counsel was personally dishonest. (*Ibid.*) Even more egregious, however, the prosecutor in *Seumanu* also stated defense counsel knew the defendant was guilty and knew the jury would not believe his assertion another individual had instead committed the alleged crime. (*Ibid.*) Unlike *Seumanu*, the prosecutor here did not argue defense counsel knew Quiroz was guilty or knew the jury would not believe the proffered testimony, nor did she accuse him of intentionally putting forward a false defense. Further, in *Seumanu*, the court found defense counsel waived any error by failing to object and, further, any error was not prejudicial because of the strong evidence of the defendant's guilt. (*Id.* at p. 1338.) Similarly, here, Quiroz waived this argument by failing to object and was not prejudiced in any event because the overwhelming evidence indicates he caused the accident by swerving and then grossly overcorrecting while intoxicated. We conclude the prosecutor's remarks did not amount to prosecutorial misconduct and did not prejudice Quiroz.

III

*Quiroz's Counsel Was Not Ineffective*

Quiroz also argues he received ineffective assistance of counsel because of defense counsel's failure to (1) request the imminent peril instruction, (2) object to the

11

prosecutor's statements during closing, and (3) object to testimony from Anderson regarding the statements of an unnamed second witness.

A defendant arguing ineffective assistance of counsel must show counsel's performance was well below the standard of reasonableness under prevailing professional norms and the deficiency undermined the fairness of the defendant's trial or, put another way, the result would have been more favorable to the defendant but for counsel's unreasonably substandard performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 686-688; *In re Wilson* (1992) 3 Cal.4th 945, 950.) On review, we presume trial counsel's decisions were proper and give deference to trial counsel's tactical choices. (*Strickland,* at pp. 681, 691; *People v. Frye* (1998) 18 Cal.4th 894, 979-980; *People v. Hinton* (2006) 37 Cal.4th 839, 876.) We assess the reasonableness of counsel's tactical decisions under the circumstances in which counsel made the decisions and do not second-guess them in hindsight. (*People v. Scott* (1997) 15 Cal.4th 1188, 1211-1212.)

A. *Failure to Request Imminent Peril Instruction*

First, Quiroz argues his counsel was ineffective by not requesting the imminent peril instruction, but, as discussed *ante*, the evidence did not support the instruction. Instead of focusing the jury on whether there was a "sudden and unexpected emergency"—a theory the evidence did not support—counsel pointed to Anderson's testimony that he would not have cited Quiroz had he swerved to avoid an object, and argued the prosecution did not meet its burden to prove Quiroz committed an illegal act or did not perform a legal duty as required by each of the charged offenses. We conclude this was a reasonable tactical decision under the governing deferential standard.

12

Further, even were we to conclude it was unreasonable for his counsel not to have requested the imminent imperil instruction, we would not find Quiroz suffered any prejudice as a result. The instruction would have informed the jury he was required only to use the same care and judgment that an ordinarily careful person would use in the same situation. (See *Boulware, supra*, 41 Cal.App.2d at p. 269.) The overwhelming evidence here indicates there was no other car, but, instead, Quiroz made an extreme overcorrection after swerving due to his impairment from the alcohol in his system. Even had he swerved to the left to avoid another car, the extreme overcorrection was unreasonable, unlawful, and the proximate cause of the accident.

B. *Failure to Object to Prosecutor's Closing Argument*

Quiroz asserts his counsel was ineffective for not objecting to the prosecutor's closing argument. However, as discussed *ante* as well, the prosecutor did not commit misconduct in her closing statement. An objection was not necessary and the court likely would have overruled the objection in any event. We therefore conclude this too was a reasonable tactical decision under the governing deferential standard and Quiroz was not prejudiced as a result.

C. *Failure to Object to Anderson's Testimony Regarding Unnamed Second Witness's Statement*

Finally, Quiroz argues his counsel was ineffective for not objecting to Anderson's testimony regarding statements made by a second unnamed witness during his investigation as hearsay. Where, as here, a hearsay objection may have drawn attention to testimony that may have come in through the individual making the statement or

13

another exception to the hearsay rule, we give deference to counsel's tactical decision not to object. (See *People v. Montiel* (1993) 5 Cal.4th 877, 918, overruled on another ground in *People v. Sanchez* (2016) ___ Cal.4th ___ [2016 WL 3557001].) In any event, Quiroz did not suffer prejudice because of the testimony, as the statement of the second witness was consistent with that of testifying witness Moore, with the exception of the use of the word "drift" instead of "went to" or "swerve."

Quiroz also argues for the first time in his reply brief that the testimony was also nonresponsive. We need not address this argument, as he did not previously raise it. (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894-895, fn. 10 [" ' "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before" ' "].) Regardless, taken in context, Anderson's testimony was responsive to the questions asked. We conclude Quiroz did not receive ineffective assistance of counsel.

IV

*Cumulative Error Does Not Require Reversal*

Quiroz argues the cumulative effect of the above errors requires reversal. For the reasons we have already discussed, we have determined none of the alleged errors resulted in prejudice to Quiroz, and therefore conclude any cumulative effect also does not warrant reversal of the judgement. (See *People v. Homick* (2012) 55 Cal.4th 791, 884.)

14

DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.